# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| IYS VENTURES LLC, | ) | Case No. 23-06782 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |

---

## DEBTOR'S PLAN OF REORGANIZATION
## FILED BY IYS VENTURES, LLC

## Dated: January 12, 2024

---

Gregory K. Stern, Esq.
Monica C. O'Brien, Esq.
Dennis E. Quaid, Esq.
Rachel S. Sandler, Esq.
GREGORY K. STERN, P.C.
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558


ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

# PLAN OF REORGANIZATION
# FILED BY IYS VENTURES LLC

IYS Ventures LLC, Debtor and Debtor In Possession herein ("Debtor"), hereby proposes its Plan of Reorganization (the "Plan" or "Plan of Reorganization"), pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code").

## SUMMARY

Through its Plan, the Debtor proposes to pay its creditors from cash and cash equivalents derived from *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some combination thereof, or the continued operations of its Leased and Owned Stations, and *iii*) the Net Proceeds of Litigation Claims including the PMPA Adversary as more fully described and set forth below.

Commencing on the Effective Date of the Plan, which date shall be thirty (30) days following the entry of an Order confirming the Debtor's Plan, or such other date as is set forth therein, the Debtor anticipates disbursing payments to its creditors, as follows:

| Category | Allowed Claims | Plan Treatment |
|---|---|---|
| **Administrative Priority Fee Claims** | $500,000.00 Estimated | Administrative Priority Fee Claims of the Debtor's retained professionals including, the attorneys of Gregory K. Stern, PC, John Morgan, Ray Luck, and Matthew Brash and Newpoint Advisors Corporation shall be paid on the later of *(i)* the Effective Date or *(ii)* approval and allowance of interim and final compensation by the Bankruptcy Court, or *(iii)* on such other terms as agreed upon between the Debtor and the claimant asserting the Administrative Priority Fee Claim. |
| **Other Administrative Priority Claims** | $360,000.00 Estimated | Other Administrative Priority Claims of the United States Trustee and unknown others shall be paid on the Effective Date, or as soon as practical thereafter. The Other Administrative Priority Claim of Muwafak Rizek in the estimated amount of $180,000.00 will be forgiven and waived of Muwafak Rizek's on the Effective Date as new value for Muwak Rizek's membership interest in the Reorganized Debtor. |
| **Priority Tax Claim – Illinois Lottery (POC 30)** | $25,648.30 | The Priority Tax Claim of the Illinois Lottery shall be paid, in full, on the Effective Date, or as soon as practical thereafter, or with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $579.08, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full. |

| | | |
|---|---|---|
| **Priority Tax Claim - South Dakota Department of Revenue (POC 7)** | $16,003.60 | The Priority Tax Claim of the South Dakota Department of Revenue shall be paid, in full, on the Effective Date or, as soon as practical thereafter, or with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $361.32, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full. |
| **Priority Tax Claims - Ohio Department of Taxation (POC 35)** | $476,926.26 | The Priority Tax Claim of the Ohio Department of Taxation is disputed in its entirety and after adjudication of the objection to the Ohio Department of Taxation's Claim any allowed amount shall be paid, in full, on the Effective Date, or as soon as practical thereafter, or with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full. |
| **Priority Tax Claims – Wisconsin Department of Revenue** | $78,082.05 | The Priority Tax Claim of the Wisconsin Department of Revenue shall be paid, in full, on the Effective Date, or as soon as practical thereafter, or with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $1,762.91, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full. |
| **Other Priority Claims - PepsiCo Sales, Inc. (POC 26** | $25,727.02 | The Priority Claim of PepsiCo Sales, Inc. shall be paid, in full, on the Effective Date, or as soon as practical thereafter, or with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $581.31, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Twenty-Three (23) months and until paid in full. |
| **Class 1(a), 1(b), 1(c), 1(d) and 1(e) Secured Claims:** | | Class 1(a), 1(b), 1(c), 1(d) and 1(e) Claims are impaired under the Plan. |
| **Class 1(a) Itria Ventures, LLC (POC 24)** | $899,286.90 | The Secured Claim of the Class 1(a) Claimant will be paid, in full, on the Effective Date, or as soon as practical thereafter, or with interest at the rate of five percent (5%) per annum in equal monthly installments of principal and interest in the amount of $13,334.88, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Seventy-Two (72) months and until paid in full. The Plan does not provide for any further distributions to the Class 1(a) Claimant. Class 1(a) Claimant may be prepaid without penalty or discount. |

| | | |
|---|---|---|
| **Class 1(b) Eby-Brown Company, LLC (POC 21)** | $7,117,731.00 | The Secured Claim of the Class 1(b) Claimant will be bifurcated and paid, in full, to the extent of the value of the Class 1(b) Claimant's allowed secured claim ($295,000.00), or as soon as practical thereafter, or with interest at the rate of five percent (5%) per annum in equal monthly installments of principal and interest in the amount of $4,750.96, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Seventy -Two (72) months and until paid in full. The balance of the Class 1(b) Claim in the amount of $6,822,731.00 will be paid as a Class 5 general unsecured non-priority claim. The Class 1(b) Claimant may be prepaid without penalty or discount. |
| **Class 1(c) The Huntington National Bank (POC 12)** | $5,640,225.03 | The Secured Claim of the Class 1(c) Claimant will receive no distribution as a Class 1(c) Claimant and its allowed claim will be paid as a Class 5 general unsecured non-priority claim. |
| **Class 1(d) Byzfunder NY, LLC (POC 32)** | $153,986.32 | The Secured Claim of the Class 1(d) Claimant will receive no distribution as a Class 1(d) Claimant and its allowed claim will be paid as a Class 5 general unsecured non-priority claim. |
| **Class 1(e) Fox Capital Group, Inc. (POC 31)** | $442,005.00 | The Secured Claim of the Class 1(e) Claimant will receive no distribution as a Class 1(e) Claimant and its allowed claim will be paid as a Class 5 general unsecured non-priority claim. |
| **Class 2 – The Huntington National Bank Secured Claim (POC 13)** | $373,711.42 | The Secured Claim of the Class 2 Claimant in the amount of $67,497.02 will be paid, in full, on the Effective Date or as soon as practical thereafter, or with interest at the rate of five percent (5%) per annum in equal monthly installments of principal and interest in the amount of $1,554.41, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Forty-Eight (48) months and until paid in full. The balance of the Class 2 Claim in the amount of $306,214.40 will be paid as a Class 5 general unsecured non-priority claim.<br><br>Class 2 Claims are impaired under the Plan. |
| **Class 3 – CrossAmerica Partners, LP Secured Claim (Amended POC 23)** | $332,003.83 | The Secured Claim of the Class 3 Claimant is disputed in its entirety. After adjudication of an objection to the Class 3 Claimant's Secured Claim will be paid, in full, on the Effective Date, or as soon as practical thereafter, or through periodic payments of $1,000.00 per month commencing on the 15th of the month following the |

| | | |
|---|---|---|
| | | Effective Date and the 15th of the month thereafter until paid in full. The Plan does not provide for any further distributions to the Class 3 Claimant. The Class 3 Claimant may be prepaid without penalty or discount. Class 3 Claims are impaired under the Plan. |
| **Class 4(a), 4(b), 4(c), 4(d), 4(e), 4(f) and 4(g) Secured Motor Vehicle Claims** | | Class 4(a), 4(b), 4(c), 4(d), 4(e), 4(f) and 4(g) Claims are impaired under the Plan. |
| **Class 4(a) Mercedes-Benz Financial Services USA LLC (POC 2)** | $43,268.72 | Surrender and abandon Motor Vehicle to the Class 4(a) Claimant in full and final satisfaction of its Class 4(a) Claim. The Plan does not provide for any further distributions to the Class 4(a) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale. |
| **Class 4(b) BMW Bank of North America (POC 4)** | $155,443,27 | Surrender and abandon Motor Vehicle to Class 4(b) Claimant in full and final satisfaction of the Class 4(b) Claim. The Plan does not provide for any further distributions to the Class 4(b) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale. |
| **Class 4(c) Ally Bank (POC 5)** | $30,433.86 | Surrender and abandon Motor Vehicle to the Class 4(c) Claimant in full and final satisfaction of the Class 4(c) Claim. The Plan does not provide for any further distributions to the Class 4(c) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale. |
| **Class 4(d) BMW Bank of North America (POC 6)** | $103,357.40 | Surrender and abandon Motor Vehicle to the Class 4(d) Claimant in full and final satisfaction of the Class 4(d) Claim. The Plan does not provide for any further distributions to the Class 4(d) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale. |
| **Class 4(e) Mercedes-Benz Financial Services USA LLC (POC 8)** | $71,927.20 | Surrender and abandon Motor Vehicle to the Class 4(e) Claimant in full and final satisfaction of the Class 4(e) Claim. The Plan does not provide for any further distributions to the Class 4(e) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale. |
| **Class 4(f) Mercedes-Benz Financial Services USA LLC (POC 25)** | $19,130.83 | Class 4(f) - Motor Vehicle Claim of Mercedes-Benz Financial Services USA LLC secured by 2021 Mercedes-Benz Sprinter. The installment note in the approximate principal amount of $19,130.83 shall be repaid, in full, and all terms and provisions of the installment note shall remain in full force and effect. Payments in the amount of $1,619.40 will be made on the 15th of the month after the Effective Date and each 15th of the month thereafter until the balance due under the |

| | | |
|---|---|---|
| | | installment note is paid in full. The Plan does not provide for any further distributions to the Class 4(f) Claimant. The Class 4(f) Claimant may be prepaid without penalty or discount. |
| **Class 4(g) Mercedes-Benz Financial Services USA LLC (POC 36)** | $19,263.06 | The Class 4(g) Claim (POC 36) is a duplicate of the Class 4(f) Claim (POC 25) which will either be withdrawn by the Class 4(g) Claimant or objected to by the Debtor.. The Plan does not provide for any further distributions to the Class 4(g) Claimant. |
| **Class 5 General Non-Priority Unsecured Claims** | $25,531,823.18 Estimated | Class 5 Claims, aggregating approximately $2,531,823.18 including the allowed unsecured claims of Class 1(b), 1(c), 1(d), 1(e) and 2 Claims, Priority Claims and Priority Tax Claims shall be paid pro rata distributions of deferred cash payments aggregating $1,200,000.00 from the General Unsecured Creditors Fund ("GUCF") payable on the Effective Date or $240,000.00 annually commencing on December 31, 2024, and each 31st of the year thereafter through December 31, 2028. Additionally, the Class 5 Claims will be paid pro rata distributions annually of all Net Litigation Proceeds resulting from recovery of Litigation Claims including the PMPA Adversary. <br><br> Class 5 Claims are impaired under the Plan. |
| **Class 6 - Equity Interests** | Interests of Muwafak Rizek | All equity interests shall be deemed to be terminated and canceled upon the Effective Date. Newly issued equity security interests of the Reorganized Debtor consisting of 1,000 shares of newly issued common stock shall be held in escrow by a Creditor's Trust and transferred to Muwafak Rizek after waiver of Muwafak Rizek's Other Administrative Priority Claim in the estimated amount of $180,000.00 on the Effective Date and payment of the Class 5 claims hereunder. Class 6 Claims and Equity Interests are impaired under the Plan. |

## PREAMBLE

On May 23, 2023, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The Debtor has continued in possession of its property and has operated its business as Debtor In Possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed in this case. During the Chapter 11 case a Chief Restructuring Officer ("CRO") Matthew Brash and Newpoint Advisors, LLC was employed to, *inter alia*, assist in the management of the Debtor's business operations and cash management system.

The Debtor's Plan provides for distribution to the holders of allowed claims and interests through *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned

Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some combination thereof, or the continued operations of its Leased and Owned Stations, and *iii*) the Net Proceeds of Litigation Claims including the PMPA Adversary as more fully described and set forth below.

Distributions to Priority, Class 1(a), Class 1(b), Class 1(c), Class 1(d), Class 1(e), Class 2, Class 3, Class 4(a), Class 4(b), Class 4(c), Class 4(d), Class 4(e), Class 4(f), Class 4(g) and Class 5 Claimants shall be paid on the Effective Date subject to the Debtor's ability to obtain funding from *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some combination thereof, or the continued operations of its Leased and Owned Stations, and *iii*) the Net Proceeds of Litigation Claims including the PMPA Adversary as more fully described and set forth below. In the event the Debtor is unable to sell or monetize the value of its Leased Stations and Owned Stations payments will be made through periodic payments to Priority, Class 1(a), Class 1(b), Class 1(c), Class 1(d), Class 1(e), Class 2, Class 4(a), Class 4(b), Class 4(c), Class 4(d), Class 4(e), Class 4(f), Class 4(g) and Class 5 Claimants over varying terms. A more detailed and complete discussion of the method of implementation of this Plan is set forth herein and in the Disclosure Statement which is being filed concurrent herewith.

# ARTICLE I
# DEFINED TERMS
# RULES OF CONSTRUCTION AND INTERPRETATION

Defined Terms: As used herein, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rule of Bankruptcy Procedure, will have the meaning ascribed thereto in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, as applicable.

**"Administrative Claims"** means Administrative Priority Fee Claims and Other Administrative Priority Claims as defined herein.

**"Other Administrative Priority Claims"** means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under §§503(b), 507(b) or, if applicable, §1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the business of the Debtor (such as wages and salaries) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) all fees and charges assessed against the Debtor' Estate under §1930, chapter 123 of title 28, United States Code.

**"Administrative Priority Fee Claims"** means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under §§503(b), 507(b) or, if applicable, §1114(e)(2) of the Bankruptcy Code, including: (a) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under §§330, 331 or 503(b) of the Bankruptcy Code (also defined herein as "Fee Claims").

**"Allowed"** means an Allowed Claim or Interest in a particular Class or category specified. Any reference herein to a particular Allowed Claim includes both the secured and unsecured portions of such Claim.

**"Allowed Claim"** means a Claim: (a) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such Claim and the Debtor; or, (iii) pursuant to the terms of this Plan.

For purposes of computing distributions under this Plan, the term "Allowed Claim" shall not include interest on such Claim from and after the Petition Date, except as provided in §506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

**"Assets"** mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof existing as of the Effective Date.

**"Available Cash"** means the aggregate of all Cash held by the Debtor.

**"Avoidance Actions"** means all Debtor's claims, demands and causes of action arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law.

**"Bankruptcy Case"** means this case entitled *In re IYS Ventures LLC,* pending before the United States Bankruptcy Court for the Northern District of Illinois as Case No. 23-06782.

**"Bankruptcy Code"** means Title 11 of the United States Code, as now in effect or hereafter.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Illinois having jurisdiction over the Bankruptcy Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter.

**"Business Day"** means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Byzfnder NY, LLC"** means the limited liability company holding an unperfected security interest in the assets of the Debtor.

**"CAP Affiliates"** means the affiliates of CrossAmerica Partners, LP including but not limited to LGP Realty Holdings LP, Erikson Oil Products, Inc., CAP Operations, Inc., Lehigh Gas Wholesale Services, Inc., and Lehigh Gas Wholesale LLC.

**"CAP Agreements"** means the CAP Leases, PMPA Fuel Supply Agreements and other Agreements entered into or about February and March 2021, by CrossAmerica Partners LP and its affiliates LGP Realty Holdings LP, Erikson Oil Products, Inc., CAP Operations, Inc., Lehigh Gas Wholesale Services, Inc., and Lehigh Gas Wholesale LLC and the Debtor and include PMPA Franchise and Fuel Supply Agreements (the "Fuel Supply Agreements"), Unitary Lease Agreements 00005 and 00006 (the "Leases") and other agreements.

**"CAP Security Deposit"** means the $995,000.00 that the CAP Entities retain pursuant to the Fuel Supply Agreements and other CAP Agreements.

**"Cash"** means legal tender of the United States of America and equivalents thereof.

**"Causes of Action"** means all Avoidance Actions, all objections to Claims, and any other Litigation Claims.

**"Claim"** means a "claim" as defined in §101(5) of the Bankruptcy Code.

**"Claims Bar Date"** means, the last day for Claims or Interests which date was September 1, 2023, as to non-governmental and non-foreign claims, and November 20, 2023, as to governmental creditors and foreign claimants.

**"Class"** means a category of holders of Claims or Interests, as described in Article II hereof.

**"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to §1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the order of the Bankruptcy Court, confirming this Plan pursuant to §1129 of the Bankruptcy Code.

"**CrossAmerica Partners LP"**, **"CAP" or "CAP Entities"** means CrossAmerica Partners, LP and its affiliates LGP Realty Holdings LP, Erikson Oil Products, Inc., CAP Operations, Inc., Lehigh Gas Wholesale Services, Inc., and Lehigh Gas Wholesale LLC the parties with whom on or about February and March of 2021, the Debtor entered into PMPA Franchise and Fuel Supply Agreements, Unitary Lease Agreements 00005 and 00006 and other agreements.

**"Debtor"** means IYS Ventures LLC.

**"DIP"** means Debtor in Possession.

**"DIP Financing"** means the $1,000,000.00 borrowed from Freedom Medical, Inc. pursuant to an Order Authorizing Secured Financing Pursuant to § 364(d)(1) entered on September 1, 2023 ( Docket No. 177) and an Order Authorizing Second Secured Financing Pursuant to §364(d)(1) entered on December 6, 2023, and secured by perfected first priority mortgages in and against the Owned Stations.

**"DIP Financing Lender."** means Freedom Medical, Inc.

**"Disbursing Agent"** means Matthew Brash and Newpoint Advisors Corporation, who shall serve as the Disbursing Agent for all payments under the Plan to Class 5 Claimants.

**"Disclosure Statement"** means that certain disclosure statement, including all exhibits and schedules thereto, as or supplemented from time to time, relating to this Plan as approved by order of the Bankruptcy Court.

**"Disposition" (or "Dispose")**, means the sale, transfer or other disposition of an Asset such that the entire value of the Asset is received in the form of Cash proceeds unless, the Debtor consent to another form of disposition.

**"Disputed Claim"** means any Claim as to which the Debtor have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any claim otherwise disputed by the Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

**"Disputed Claim Amount"** means (a) with respect to contingent or unliquidated Claims, the amount estimated by the Bankruptcy Court for purposes of distributions in respect of such Claim in accordance with §502(c) of the Bankruptcy Code; or (b) the amount set forth in a timely filed proof of claim.

**"Distribution(s)"** mean any payment(s) of Cash that this Plan requires to be made to Holders of Allowed Claims.

**"Distribution Date"** means that date when the Debtor's Cash is sufficient to make Distribution on a Pro Rata basis on Allowed Unsecured Claims, and the Debtor makes such Distribution on Allowed Unsecured Claims. The Distribution Date shall not take place until full payment is made on Allowed Administrative Claims, if any.

"**EBY-Brown Company, LLC**" means the Debtor's secured creditor holding a bifurcated Class 1 Secured Claim pursuant to a second priority security interest in the assets of the Debtor.

**"Effective Date"** means that date thirty (30) days after the Confirmation Date

**"Estate"** means all property and rights of whatever kind held by the Debtor or Debtor in Possession created under §541 of the Bankruptcy Code.

**"Fee Claims"** means an Administrative Claim arising or asserted under §§330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Bankruptcy Case on or prior to the Effective Date.

**"File" "Filed" or "Filing"** means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

**"Final Order"** means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari or re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, re-argument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided,

however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

**"Fox Capital Group, Inc."** means the financial services company holding an unperfected security interest in the assets of the Debtor.

**"Franchise Relationship"** means the motor fuel marketing and distributions obligations and responsibilities between the Debtor and CrossAmerica Partners LP and, or any of the CAP Affiliates resulting from the marketing of motor fuel under one or more of the CAP Agreements.

**"General Unsecured Creditors Fund" or "GUCF"** means the fund from which pro-rata distributions of deferred cash payments will be disbursed to allowed general unsecured non-priority claims.

**"Holder"** means an entity holding a Claim or Interest.

**"Impaired"** means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of §1124 of the Bankruptcy Code.

"**Itria Ventures, LLC**" means the financial services company holding an allowed Class 1 Secured Claim pursuant to a perfected first priority security interest and lien in and against the assets of the Debtor.

**"Leased Stations"** means the forty (40) stations leased from the CAP Entities pursuant to Unitary Lease Agreements 00005 and 00006 and as more fully identified and set forth on Appendix 1 attached to the Plan.

**"Leases"** means the CAP Agreements between the Debtor and CrossAmerica Partners LP and, or any of the CAP Affiliates arising out of and pursuant to Unitary Lease Agreements 00005 and 00006 and related to the use and occupancy of any of the Leased Stations.

**"Litigation Claims"** means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or Estate may hold against any person or entity under the Bankruptcy Code or any non-bankruptcy law, including without limitation those Litigation Claims described in the Disclosure Statement, Avoidance Actions and other undetermined claims and rights of action.

**"Management Agreements"** means the substantially similar Management and Operations Agreements of the Debtor and pursuant to which the counterparties to the Management Agreements have several enumerated duties set forth therein and including 7 Mart Inc. pursuant to a Management Agreement dated December 1, 2022; Ameer Investment Inc. pursuant to two separate Management Agreements dated November 1, 2022; Areej Investment Inc. pursuant to a Management Agreement dated November 1, 2022; F&M Stop Market LLC pursuant to a Management Agreement dated December 1, 2022; Kareem Inc pursuant to two separate Management Agreements both dated November 1, 2022; Kenan Ventures LLC pursuant to a Management Agreement dated March 1, 2023; Leanne Investment LLC pursuant to a Management Agreement dated November 1, 2022; Leanne Ventures LLC pursuant to a Management Agreement dated November 1, 2022; and M&A 200 Inc. pursuant to a Management Agreement dated December 1, 2022.

**"Management Companies"** means 7 Mart Inc.; Ameer Investment Inc.; Areej Investment Inc.; F&M Stop Market LLC; Kareem Inc.; Kenan Ventures LLC; Leanne Investment LLC; Leanne Ventures LLC; and M&A 200 Inc. the counterparties to the Management Agreements.

**"Net Proceeds of Litigation Claims"** means the net amounts received by the Debtor from Causes of Action and Litigation Claims after payment of all administrative claims, attorney fees and taxes.

**"Net Proceeds of Sale or Finance"** means the net amounts received by the Debtor from the sale or finance of assets, including but not limited to the Owned Stations, after payment of all costs of sale or refinance including but not limited to prorations, attorney fees and taxes.

**"Net Proceeds of Sale of Leased Stations"** means the net amounts received by the Debtor from the assignment, liquidation and, or sale of assets, including but not limited to the Franchise Relationships, Leases, Supply Agreements, fuel, c-store inventories and improvements less costs of sale including but not limited to amounts owed for fuel and convenience store inventories.

**"Net Proceeds of Sale of Surrendered Stations"** means the sums paid by the CAP Entities to the Reorganized Debtor equal to the value of the Surrendered Stations' improvements, fuel inventories at cost and sixty-seven percent (67%) of the retail value of legal convenience store inventories less costs of sale including but not limited to amounts owed for fuel and convenience store inventories, and prorations for paid rent and taxes.

**"Order For Relief"** means May 23, 2023, the date on which the Order For Relief was entered.

**"Owned Stations"** means the ten (10) stations purchased by the Debtor from the CAP Entities as more fully identified and set forth on Appendix 1 attached to the Plan.

**"Plan Administrator"** means Matthew Brash and Newpoint Advisors Corporation, who shall serve as the Plan Administrator to oversee and supervise all payments under the Plan and to hold the equity interests of the Reorganized Debtor subject to completion of the payments under the Plan to Class 5 Claimants.

**"PMPA Adversary"** means the adversary complaint filed by the Debtor on November 14, 2023, against the CAP Entities seeking relief and damages for, *inter alia*, violations of the Petroleum Protection Practices Act ("PMPA") and breach of contract and assigned adversary case number 23A00352.

**"Petition Date"** means May 23, 2023, the date on which the Petition was filed by the Debtor commencing the Bankruptcy Case.

**"Plan"** means this plan of reorganization and all supplements, appendices and schedules hereto, in its present form or as the same may be altered, amended or modified from time to time.

**"Priority Claims"** means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

**"Priority Tax Claims"** means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a)(8).

**"Professional" or "Retained Professional"** means any (a) professional employed in the Chapter 11 case pursuant to §§327 or 1103 of the Bankruptcy Code or otherwise and (b) other professional or other

entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 case pursuant to §503(b)(4) of the Bankruptcy Code.

**"Pro Rata Share"** means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in the Class to which such Allowed Claim belongs that are not claims which have been disallowed by final order of the Bankruptcy Court or by agreement.

**"Surrendered Stations"** means those Leased Stations that the Reorganized Debtor identifies for pushback and or surrender to the CAP Entities.

**"Supply Agreements"** means the agreements between the Debtor and CrossAmerica Partners LP and, or any of the CAP Affiliates related to the supply, provision, sale, delivery of or any other transaction regarding and relating to motor fuels, whether trademarked or not, pursuant to one or more of the CAP Agreements.

"**The Huntington National Bank" or "Huntington Bank"** means the Debtor's creditor holding Class 1(c), Class 2 and Class 5 Claims and Defendant in Adversary Proceeding 23 A 0168 filed by the Debtor seeking relief pursuant to 11 U.S.C. § 547 to avoid Defendant's attachment against assets of the Debtor as a preferential transfer, which action is pending.

 **"Unimpaired Claim"** means a claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

**"Unsecured Claim"** means a general unsecured, non-priority claim.

**"Rules of Interpretation" and "Computation of Time"** for purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be , modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in §1021, of the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a), will apply.

Unless otherwise specified all other terms shall be deemed as defined in 11 U.S.C. §101, if applicable.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Debtor In Possession Operating Expenses and Claims, Administrative Claims, Priority Claims, Priority Tax Claims, and Executory Contracts and Unexpired Lease Claims are placed in the Classes set forth below. In accordance with §1123(a)(1), of the Bankruptcy Code, Debtor In

Possession Operating Expenses and Claims, Administrative Claims, Priority Claims, Priority Tax Claims, and Executory Contracts and Unexpired Lease Claims as described below, have not been classified.

A Claim or Interest is placed in a Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.1  <u>Unclassified Claims</u> (Not Entitled To Vote On The Plan)

2.1.1. <u>Debtor In Possession Operating Expenses and Claims</u>.  These claims consist of the post-petition expenses, obligations and claims incurred and paid in the ordinary course of the Debtor's business and financial affairs.

2.1.2 <u>Administrative Claims</u>. Administrative Priority Fee Claims consist of the claims of the attorneys of Gregory K. Stern, P.C., John Morgan, Ray Luck, and Matthew Brash and Newpoint Advisors Corporation; and Other Administrative Priority Claims consist of the claims of Muwafak Rizek, the quarterly statutory fees owed to the United States Trustee and unknown others..

2.1.3. <u>Priority Claims other than Administrative Priority Claims, Adminitrative Priority Fee Claims and Priority Tax Claims, including §503(b) and §365(d) claims</u> consist of the allowed claim of *i*) PepsiCo Sales, Inc.

2.1.4. <u>Priority Tax Claims</u> - Priority Tax Claims entitled to priority pursuant to §507(a)(8) consist of the allowed claims of *i*) Illinois Lottery in the amount of $25,648.30 (the Illinois Lottery Priority Tax Claim"), *ii*) the allowed claim of the South Dakota Department of Revenue ("SDDOR") in the amount of $16,003.60 (the "SDDOR Priority Tax Claim"), *iii*) the allowed claim of the Ohio Department of Taxation("ODOR") in the amount of $476,976.26[1] (the "ODOR Priority Tax Claim"), and *iv*) other allowed Priority Tax Claims, if any.

2.1.5. <u>Executory Contracts and Unexpired Leases</u> – *i*) CrossAmerica Partners LP, Erickson Oil Products, Inc., CAP Operations, Inc., LPG Realty Holdings LP and Lehigh Gas Wholesale Services, Inc. PMPA Franchise and Fuel Supply Agreements (the "Fuel Supply Agreements"), Unitary Lease Agreements 00005 and 00006 (the "Leases") and other agreements (collectively, the "CAP Agreements"); *ii*) 7 Mart Inc., Ameer Investment Inc., Areej Investment Inc., F&M Stop Market LLC; Kareem Inc., Kenan Ventures LLC, Leanne Investment LLC, Leanne Ventures LLC, and M&A 200 Inc. Management and Operations Agreements (the "Management Agreements") with; *iii*) Agreement of Sale (the "Kemp Avenue Agreement") for the purchase of the commercial property located at 223-225 West Kemp Avenue, Waterton, South Dakota, 57201 (the "Kemp Avenue Property"); *iv*) Agreement of Sale (the "Sandborn Boulevard Agreement") for the purchase of the commercial property located at 512 South Sandborn Boulevard, Mitchell Waterton, South

---

[1] The ODOR Priority Tax Claim has been objected to by the Debtor.

Dakota, 57201 (the "Sandborn Boulevard Property"); *v*) Volkswagen Credit motor vehicle lease; and, *vi*) any other unknown executory contracts and unexpired leases.

2.2    **Impaired Classes of Claims** (Entitled to Vote on The Plan)

2.2.1.  Class 1(a) – <u>Secured Claim of Itria Ventures, LLC</u>.  Class 1(a) claims consist of the allowed secured claim of Itria Ventures, LLC in the amount of $899,286.90 secured by a perfected first priority lien in and against the Debtor's assets.

Class 1(b) – <u>Secured Claim of Eby-Brown Company, LLC</u>.  Class 1(b) claims consist of the allowed secured claim of Eby-Brown Company, LLC in the amount of $7,117,731.00 secured by a perfected second priority lien in and against the Debtor's assets.

Class 1(c) – <u>Secured Claim of The Huntington National Bank</u>.  Class 1(c) claims consist of the allowed secured claim of The Huntington National Bank in the amount of $5,640,225.03 secured by an avoidable preferential lien in and against the Debtor's assets.

Class 1(d) – <u>Secured Claim of Byzfunder NY, LLC</u>.  Class 1(d) claims consist of the allowed secured claim of Byzfunder NY, LLC in the amount of $153,986.32 secured by an unperfected lien in and against the Debtor's assets.

Class 1(e) – <u>Secured Claim of Fox Capital Group, Inc.</u>  Class 1(e) claims consist of the allowed secured claim of Fox Capital Group, Inc. in the amount of $442,005.00 secured by an unperfected lien in and against the Debtor's assets.

2.2.2.  Class 2 – <u>Secured Claim of The Huntington National Bank</u>.  Class 2 claims consist of the allowed secured claim of The Huntington National Bank in the amount of $67,497.02 secured by a security interest and lien in and against certain gasoline pumps.

2.2.3.  Class 3 – <u>Secured Claim of CrossAmerica Partners, LP</u>.  Class 3 claims consist of the allowed secured claim of CrossAmerica Partners, LP in the amount of $332,003.83 which is purportedly secured and is disputed in its entirety by the Debtor.

2.2.4   Class 4(a) – <u>Secured Claim of Mercedes-Benz Financial Services</u>.  Class 4(a) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $43,268.72 secured by a perfected security interest and lien in and against a certain Motor Vehicle.

Class 4(b) – <u>Secured Claim of BMW Bank of North America</u>.  Class 4(b) claims consist of the allowed secured claim of BMW Bank of North America in the amount of $155,443.27 secured by a security interest and lien in and against a certain Motor Vehicle.

Class 4(c) – <u>Secured Claim of Ally Bank</u>.  Class 4(c) claims consist of the allowed secured claim of Ally Bank in the amount of $30,433.86 secured by a security interest and lien in and against a certain Motor Vehicle.

Class 4(d) – <u>Secured Claim of BMW Bank of North America</u>.  Class 4(d) claims consist of the allowed secured claim of BMW Bank of North America in the amount of $103,357.40 secured by a security interest and lien in and against a Motor Vehicle.

Class 4(e) – <u>Secured Claim of Mercedes-Benz Financial Services.</u>  Class 4(e) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $71,927.20 secured by a security interest and lien in and against a certain Motor Vehicle.

Class 4(f) – <u>Secured Claim of Mercedes-Benz Financial Services</u>.  Class 4(f) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $19,130.83 secured by a security interest and lien in and against a certain 2021 Mercedes-Benz Sprinter VIN No. W1Y4DDHY6MT050554.

Class 4(g) – <u>Secured Claim of Mercedes-Benz Financial Services.</u>  Class 4(g) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $19,263.06 secured by a security interest and lien in and against a certain Motor Vehicle.

Class 5 – <u>General Unsecured Non-Priority Claims</u>. Class 5 claims consist of allowed claims which are General Non-Priority Unsecured Claims, and include the general non-priority unsecured portions of Priority Tax Claims, Class 1 Claims, Class 2 Claims and Class 4 Claims, if any, and all other claims of whatever kind that are not specifically dealt with elsewhere in the Plan and aggregate approximately $25,531,823.18.

2.3    <u>Impaired Classes of Interests</u> (Not Entitled To Vote on the Plan).

2.3.1.   Class 6 - Claims and Equity Interests.  Class 6 consists of all Equity Security Interests in the Debtor including the membership interests of Muwafak Rizek (99%) and IMart Stores, LLC (1%).

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

3.1    <u>Unclassified Claims</u> (Not Entitled To Vote On The Plan)

3.1.1    Debtor In Possession Operating Expenses and Claims – The Debtor has paid all Debtor In Possession operating costs, expenses, and obligations as they became due, pursuant to the credit terms established between the Debtor and each of its creditors.  No Debtor In Possession operating costs, expenses, obligations or claims will remain unpaid at the Effective Date of the Plan, other than those operating costs, expenses or obligations and claims which are due in the ordinary course of the Debtor's business affairs and operations.  Any unknown operating costs, expenses or obligations shall be paid on the Effective Date of the Plan to the extent that they are known prior thereto and are due pursuant to the established credit terms, or they shall be paid as they become known and due.

3.1.2    <u>Other Administrative Priority Claims and Administrative Priority Fee Claims</u> –

Other Administrative Priority Claims consisting of statutory fees owed to the United States Trustee and estimated to be in the amount of $182,000.00 and shall be paid, in full, on

Effective Date or as soon as practical thereafter, and shall be paid on a regular basis thereafter as incurred until the Bankruptcy Case is closed.

Other Administrative Priority Claims of Muwafak Rizek Debtor's Managing Member shall be dealt with in Article III, Section 3.3.

Administrative Priority Fee Claims shall be paid, in full, in cash, on the later of (1) the Effective Date or as soon as practical thereafter, (2) upon approval by the Bankruptcy Court of such Administrative Claims and Fee Claims, or (3) on such other terms as agreed upon between the Debtor and the party asserting the Administrative Claim. These claims consist of the Administrative Claims of the attorneys of Gregory K. Stern, P.C., John Morgan, Ray Luck, the Debtor's Chief Restructuring Officer Matthew Brash and Newpoint Advisors Corporation, The Administrative Claims of the Gregory K. Stern, P.C., John Morgan, Ray Luck, the Debtor's Chief Restructuring Officer Matthew Brash and Newpoint Advisors Corporation are to be in the aggregate amount of $500,000.00.

To the extent that there are other Allowed Administrative Priority Claims, they shall be paid, in full, by the Debtor on the Effective Date or as soon as practicable thereafter.

The holders of Administrative Claims shall neither receive nor retain on account of such Claims any interest in, claims against, or rights, privileges, or powers in respect of the Debtor, or any of the Debtor's Assets or property.

3.1.3     Priority Claims – Priority Claims, other than Administrative Priority Claims, Administrative Priority Fee Claims and Priority Tax Claims, shall be paid, in full, on the Effective Date or as soon as practical thereafter, or with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Twenty-Three (23) months and until paid in full.

The allowed claim of PepsiCo Sales in the amount of $25,727.97 is the only known Priority Claim and if not paid on the Effective Date it shall be paid with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $581.31, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for Twenty-Three (23) months and until paid in full.

The holders of Priority Claims shall neither receive nor retain on account of such Claims any interest in, claims against, or rights, privileges or powers in respect of the Debtor, or any of the Debtor's Assets or property.

3.1.4     Priority Tax Claims – Priority Tax Claims entitled to priority pursuant to §507(a)(8) consisting of the IRS Priority Tax Claim, the IDOR Priority Tax Claim, the IDES Priority Tax Claim and the Ohio Department of Taxation shall be paid, in full, on the Effective Date or as soon as practical thereafter. If not paid on the Effective Date Priority Tax Claims shall be paid with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest, commencing on the 15th of the month following the Effective Date and the 15th of the month thereafter for an additional Forty-Seven (47) months and until paid in full.

If not paid on the Effective Date, or as soon as possible thereafter, the Priority Tax Claim of the Illinois Lottery shall be paid with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $579.08, commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full.

If not paid on the Effective Date, or as soon as possible thereafter, the Priority Tax Claim of the South Dakota Department of Revenue shall be paid with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $361.32, commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full.

If not paid on the Effective Date, or as soon as possible thereafter, the Priority Tax Claim of the Ohio Department of Taxation is disputed in its entirety and after adjudication of the objection to the Ohio Department of Taxation's Claim any allowed amount shall be paid, with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest, commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full.

If not paid on the Effective Date, or as soon as possible thereafter, the Priority Tax Claim of the Wisconsin Department of Revenue shall be paid with interest at the rate of three percent (3%) per annum in equal monthly installments of principal and interest in the amount of $1,762.91 commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter for Forty-Seven (47) months and until paid in full.

The Holders of Priority Tax Claims shall be limited to the Cash payment provided herein except to the extent they hold a general unsecured non-priority Class 5 Claim. The payment of the Priority Tax Claims in accordance with this Section 3.1.4 shall be in full and final satisfaction, settlement, release and discharge of such Allowed Priority Tax Claim against the Debtor and the Estate. Thereafter, the Holders of such Allowed Claims shall neither receive nor retain on account of such Claims any interest in, claims against, or rights, privileges or powers in respect of the Debtor, the Estate, or the Assets.

3.2     Impaired Classes of Claims. (Entitled to Vote on Plan)

3.2.1     Class 1(a) – Itria Ventures, LLC - The Class 1(a) Secured Claim shall be paid $899,0286.90, the value of the Class 1(a) Secured Claim, on the Effective Date, or as soon as practical. If not paid on the Effective Date the Class 1(a) Claim shall be paid with interest at the rate of five percent (5%) per annum in equal monthly installments of principal and interest in the amount of $13,334.88, commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter for Seventy-Two (72) months and until paid in full. The Plan does not provide for any further distributions to the Class 1(a) Claimant.

The Class 1(a) Secured Claim shall be collateralized by its perfected pre-petition liens and security interests in and against the Debtor's assets. Itria Ventures, LLC's liens and security interests shall have the same validity, perfection, and enforceability as it had pre-petition without any further action by the Debtor or Itria Ventures, LLC. After payment in full of Itria Ventures, LLC's Class 1(a) Secured Claim it shall cause its pre-petition liens and security

interests to be released as to Debtor. Itria Ventures, LLC's Class 1(a) Secured Claim may be prepaid without penalty or discount. Itria Ventures, LLC's Class 1(a) Secured Claim is impaired under the Plan.

Class 1(b) – <u>Eby Brown Company, LLC</u> - The Class 1(b) Secured Claim shall be paid $295,000.00, the value of the Class 1(b) Secured Claim, in full, on the Effective Date, or as soon as practical. If not paid on the Effective Date the Class 1(b) Claim shall be paid with interest at the rate of five percent (5%) per annum in equal monthly installments of principal and interest in the amount of $4,750.96, commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter for Seventy-Two (72) months and until paid in full. The Plan does not provide for any further distributions to the Class 1(b) Claimant.

The Class 1(b) Secured Claim shall be collateralized by the perfected pre-petition liens and security interests in and against the Debtor's assets. Eby Brown Company, LLC's liens and security interest shall have the same validity, perfection, and enforceability as it had pre-petition without any further action by the Debtor or Eby Brown Company, LLC. After payment in full of Eby Brown Company, LLC' Class 1(b) Secured Claim it shall cause its pre-petition liens and security interests to be released as to Debtor. Eby Brown Company, LLC's unsecured claim in the amount of $6,822,731.00 shall receive pro-rata distributions as a Class 5 Claim. Eby Brown Company, LLC's Class 1(b) Secured Claim may be prepaid without penalty or discount. Eby Brown Company, LLC's Class 1(b) Secured Claim is impaired under the Plan.

Class 1(c) – <u>The Huntington National Bank</u> - The Class 1(c) Secured Claim of the Huntington National Bank shall receive no distributions as a Class 1(c) Secured Claim because, *inter alia*, there is no remaining collateral, after payment of Class 1(a) and Class 1(b) Secured Claims, to collateralize the Class 1(c) Secured Claim. The Plan provides that The Huntington National Bank's unsecured claim in the amount of $5,640,225.03 shall receive pro-rata distributions as a Class 5 Claim. The Huntington National Bank's Class 1(c) Secured Claim is impaired under the Plan.

f

Class 1(d) – <u>Byzfunder NY, LLC</u> – The Class 1(d) Secured Claim of Byzfunder NY, LLC shall receive no distributions as a Class 1(c) Secured Claim because, *inter alia*, there is no remaining collateral, after payment of Class 1(a) and Class 1(b) Secured Claims, to collateralize the Class 1(d) Secured Claim. The Plan provides that Buzfunder NY, LLC's unsecured claim in the amount of $153,986.32 shall receive pro-rata distributions as a Class 5 Claim. Byzfunder NY, LLC's Class 1(d) Secured Claim is impaired under the Plan.

Class 1(e) – <u>Fox Capital Group, Inc.</u> – The Class 1(e) Secured Claim of Fox Capital Group, Inc. shall receive no distributions as a Class 1(e) Secured Claim because, *inter alia*, there is no remaining collateral, after payment of Class 1(a) and Class 1(b) Secured Claims, to collateralize the Class 1(c) Secured Claim. The Plan provides that Fox Capital Group, Inc.'s unsecured claim in the amount of $442,005.00, shall receive pro-rata distributions as a Class 5 Claim. Fox Capital Group, Inc.'s Class 1(e) Secured Claim is impaired under the Plan.

3.2.2   Class 2 – <u>Secured Claim of The Huntington National Bank</u>. Class 2 claims consist of the allowed secured claim of The Huntington National Bank in the amount of $67,497.02 secured by a perfected security interest and lien in and against certain gasoline pumps. The

Class 2 Secured Claim shall be paid $67,497.02, the value of the Class 2 Secured Claim, in full, on the Effective Date or as soon as practical thereafter. If not paid on the Effective Date the Class 2 Claim shall be paid with interest at the rate of five percent (5%) per annum in equal monthly installments of principal and interest in the amount of $1,554.41, commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter for Forty-Eight (48) months and until paid in full.

The Class 2 Secured Claim shall be collateralized by its perfected pre-petition liens and security interests in and against the Debtor's assets. After payment in full of The Huntington Bank's Class 2 Secured Claim it shall cause its pre-petition liens and security interests to be released. The Huntington Bank's unsecured claim in the amount of $306,21.40, shall receive pro-rata distributions as a Class 5 Claim. The Huntington Bank's Class 2 Secured Claim may be prepaid without penalty or discount. The Huntington Bank's Class 2 Secured Claim is impaired under the Plan.

3.2.3.  Class 3 – <u>CrossAmerica Partners, LP</u> - The Class 1(a) allowed Secured Claim in the amount of $335,003.83 is disputed by the Debtor. The Class 1(a) Claim shall be paid, in full, through equal monthly payments commencing on the 15th day of the month sixty days following the Effective Date and continuing for Seventy-One (71) months thereafter and until paid, in full. The Plan does not provide for any further distributions to the Class 3 Claimant. The Class 3 Secured Claim may be prepaid without penalty or discount. The Class 3 Secured Claim is impaired under the Plan.

3.2.4   Class 4(a) – <u>Mercedes-Benz Financial Services</u>. Class 4(a) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $43,268.72 secured by a security interest and perfected lien in and against a certain Motor Vehicle. The Debtor shall surrender and abandon the Motor Vehicle securing the Class 4(a) Claim to the Class 4(a) Claimant in full and final satisfaction of the Class 4(a) Claim. The Plan does not provide for any further distributions to the Class 4(a) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale.

Class 4(b) – <u>BMW Bank of North America</u>. Class 4(b) claims consist of the allowed secured claim of BMW Bank of North America in the amount of $155,443.27 secured by a security interest and lien in and against a certain Motor Vehicle. The Debtor shall surrender and abandon the Motor Vehicle securing the Class 4(b) Claim to the Class 4(b) Claimant in full and final satisfaction of the Class 4(b) Claim. The Plan does not provide for any further distributions to the Class 4(b) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale.

Class 4(c) – <u>Ally Bank</u>. Class 4(c) claims consist of the allowed secured claim of Ally Bank in the amount of $30,433.86 secured by a security interest and lien in and against a certain Motor Vehicle. The Debtor shall surrender and abandon the Motor Vehicle securing the Class 4(c) Claim to the Class 4(c) Claimant in full and final satisfaction of the Class 4(c) Claim. The Plan does not provide for any further distributions to the Class 4(c) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale.

Class 4(d) – <u>BMW Bank of North America</u>. Class 4(d) claims consist of the allowed secured claim of BMW Bank of North America in the amount of $103,357.40 secured by a security interest and lien in and against a Motor Vehicle. The Debtor shall surrender and abandon the Motor Vehicle securing the Class 4(d) Claim to the Class 4(d) Claimant in full and final satisfaction of the Class 4(d) Claim. The Plan does not provide for any further distributions to the Class 4(d) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale.

Class 4(e) – <u>Mercedes-Benz Financial Services.</u> Class 4(e) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $71,927.20 secured by a security interest and lien in and against a certain Motor Vehicle. The Debtor shall surrender and abandon the Motor Vehicle securing the Class 4(e) Claim to the Class 4(e) Claimant in full and final satisfaction of the Class 4(e) Claim. The Plan does not provide for any further distributions to the Class 4(e) Claimant. Any surplus of sale shall be remitted to the Reorganized Debtor within fourteen (14) business days of sale.

Class 4(f) – <u>Mercedes-Benz Financial Services</u>. Class 4(f) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $19,130.83 secured by a security interest and lien in and against a 2021 Mercedes-Benz Sprinter VIN No. W1Y4DDHY6MT050554. The installment note in the approximate principal amount of $19,130.83 shall be repaid, in full, and all terms and provisions of the installment note shall remain in full force and effect. Payments in the amount of $1,619.40 will be made on the 15th of the month after the Effective Date and each 15th of the month thereafter until the balance due under the installment note is paid in full. The Plan does not provide for any further distributions to the Class 4(f) Claimant. The Class 4(f) Claimant may be prepaid without penalty or discount.

Class 4(g) – <u>Mercedes-Benz Financial Services.</u> Class 4(g) claims consist of the allowed secured claim of Mercedes-Benz Financial Services in the amount of $19,263.06 secured by a security interest and lien in and against a certain Motor Vehicle. (The Class 4(g) Claim is believed to be a duplicate of the Class 4(g) Claim and will either be withdrawn by the Class 4(g) Claimant or objected to by the Debtor. The Plan does not provide for any distributions to the Class 4(g) Claimant.

3.2.5    Class 5 - <u>General Unsecured Non-Priority Claims</u> – General Unsecured Non-Priority Claims aggregating approximately $25,531,823.18, including the non-priority unsecured portion of Priority and Priority Tax Claims, Class 1 and Class 2 Claims, shall be paid pro rata from a fund of one million two hundred thousand dollars ($1,200,000.00) (the "General Unsecured Creditors Fund" or "GUCF"). Pro rata distributions of deferred cash payments, from the General Unsecured Creditors Fund will be disbursed on Distribution Dates as follows: on the Effective Date, or through five (5) distributions of $240,000.00 annually commencing on December 31, 2024, and each 31st of the year thereafter through December 31, 2028. The Plan does not provide for any further distributions to the Class 5 claimants. Class 5 Claims may be prepaid without penalty or discount.

3.3 <u>Impaired Class of Equity Interests</u> (Not Entitled to Vote on Plan)

3.3.1    Class 6 - Claims and Interests – Holders of Claims and Equity Interests in the Debtor shall not retain their respective Claims and Interests. Equity Interests shall be deemed to be terminated

and canceled upon the Effective Date. Newly issued equity interests of the Reorganized Debtor consisting of membership interests shall be issued and held in escrow by a Creditors Trust and transferred solely to Muwafak Rizek upon payment and satisfaction of the Class 5 Claims provided for in the Plan and forgiveness and waiver of Muwafak Rizek's Administrative Claim in the estimated amount of $180,000.00 on the Effective Date. Class 6 Claims and Equity Interests are impaired under the Plan.

## ARTICLE IV
## GENERAL PROVISIONS AND PROVISIONS FOR EXECUTION OF THE PLAN

4.1     Amendments - The proponents of this Plan reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan prior to the confirmation date or as soon as practicable thereafter. After the Effective Date, the Debtor may, upon order of the Bankruptcy Court, in accordance with § 1127(b), of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of this Plan.

4.2     Plan Assumptions include but are not limited to the following:

4.2.1   The Court's Ruling on the CAP Agreements Motions will be issued on or before the Effective Date.

4.2.2   The Court's Ruling on the CAP Agreements Motions with allow the assumption of the CAP Agreements.

4.2.3   The Court's Ruling on the CAP Agreements Motions will adjudicate and determine that the Management Agreements are not a non-financial default under the CAP Agreements

4.2.4   Alternatively, that if the Court's Ruling on the CAP Agreements Motions adjudicates and determines that the Management Agreements are a non-financial default under the CAP Agreements the non-financial default can be cured by rejection of the Management Agreements

4.2.5   In the event the Court's Ruling on the CAP Agreements Motions is rendered in favor of CAP and the Debtor is not allowed to assume the CAP Agreements the Debtor's ability to generate sufficient net operating income to fund distributions and plan payments over an extended terms of years will be substantially impaired and will most likely result in the sale of the Owned Stations, without continuing operations by the Reorganized Debtor, to monetize the value of the equity in the Owned Stations and make a one (1) time distribution and plan payments on or about the Effective Date.

4.2.6   The Reorganized Debtor will obtain funds for plan payments on the Effective Date through *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some combination thereof.

4.2.7   To the extent that the Reorganized Debtor is unable to obtain funds for payments in full on the Effective Date through *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some

combination thereof, the Debtor will commence periodic payment commencing on the 15th of the month sixty days following the Effective Date and the 15th of the month thereafter. Included with the funds referenced herein are Net Proceeds of Sale of Finance, Net Proceeds of Sale of Leased Stations and Net Proceeds of Sale of Surrendered Stations as more fully defined herein.

4.3     The Debtor's Plan provides for distribution to the holders of allowed claims and interests through funds obtained through *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some combination thereof, or the continued operations of its Leased and Owned Stations, and *iii*) the Net Proceeds of Litigation Claims including the PMPA Adversary.

4.4     Distributions to Priority, Class 1(a), Class 1(b), Class 1(c), Class 1(d), Class 1(e),Class 2, Class 3, Class 4(a), Class 4(b), Class 4(c), Class 4(d), Class 4(e), Class 4(f), Class 4(g) and Class 5 Claimants shall be paid on the Effective Date from funds to the extent and subject to the Debtor's ability obtain funds through *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some combination thereof. In the event the Debtor is unable to obtain funds for plan payments on the Effective Date through *i*) a combination of the sale or sale and leaseback of the Owned Stations or monetization of the value of the Owned Stations through new secured financing, *ii*) the sale and, or monetization of the value of its Leased Stations through new secured financing, or some combination thereof, the Debtor will commence periodic payment commencing on the 15th of the month sixty days following the Effective Date to Priority, Class 1(a), Class 1(b), Class 1(c), Class 1(d), Class 1(e),Class 2, Class 3, Class 4(a), Class 4(b), Class 4(c), Class 4(d), Class 4(e), Class 4(f), Class 4(g) and Class 5 Claimants over varying terms.

4.5     Cooperation - All holders of claims or interests receiving a distribution pursuant to the terms and conditions of the Plan shall take such actions as may be reasonably necessary to evidence and effectuate the terms and conditions of the Plan.

4.6     Refinance of Plan Debt – The Debtor shall be authorized to obtain financing of its operations or assets at any time after entry of the Confirmation Order and prior to the date for the last payment due to any class of claims under this Plan.

4.7     Funding - The Plan shall be funded by proceeds from the Estate's Available Cash, cash equivalents and proceeds generated *i*) the sale or new financing of the Owned Stations is estimated to be in the amount of $1,450,000.00 , *ii*) the sale and, or monetization of the value of its Leased Stations through new financing, or some combination thereof and estimated to be in an amount in excess of $1,000,000.00, and *iii*) the Net Proceeds of Litigation Claims including the PMPA Adversary. The Debtor projects that its cash flow will be sufficient to make the Plan payments. See, Cash Flow Projections and Claims Payment Schedule, a copy of which is attached hereto as Exhibit A and incorporated herein.

4.8     As of the Effective Date, and subject to the terms and conditions of the Plan, the Debtor shall be revested with all of its property, subject only to outstanding liens as provided by this Plan. The Debtor shall be entitled to manage its affairs without further order of this Court, subject only to the restrictions set forth in this Plan.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1     Classes Entitled to Vote - Class 1(a) Class 1(b) Class 1(c) Class 1(d) Class 1(e,) Class 2, Class 3, Class 4(a), Class 4(b), Class 4(c), Class 4(d) Class 4(e), Class 4(f), Class 4(g) and Class 5 are impaired under the Plan and entitled to vote to accept or reject the Plan.  The Holders of Claims and Interests in Class 6 are impaired under the Plan and are not entitled to vote to accept or reject the Plan.

5.2     Cram-down Confirmation of this Plan. The Debtor may request confirmation of the Plan, as it may be modified from time to time, under §1129(b) of the Bankruptcy Code with respect to any Class rejecting the Plan.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1     Distributions for Claims or Interests Allowed as of the Effective Date - Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the day prior to the Effective Date or as soon thereafter as is practicable. Any distribution to be made on or before the Effective Date pursuant to this Plan shall be deemed as having been made on the day prior to the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

6.2     Interest on Claims - Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, post petition interest shall not accrue or be paid on any Claims, and no Holder of any other Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

6.3     Fractions of Dollars - Any other provision of this Plan, notwithstanding the Debtor, shall not need to distribute funds to any holder of an Allowed Claim when the distribution total is less than five dollars ($5.00).

6.4     Delivery of Distributions in General - Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtor's records unless proofs of claim or transfers of claim timely filed pursuant to the Bankruptcy Rules changes, modifies and/or replaces such addresses.

6.5     Undeliverable and Unclaimed Distributions - Any funds distributed to the Holders of Allowed Claims that remain unclaimed by such claimants for three (3) months after disbursement will become property of the Debtor.  Any claimant failing to claim property distributed pursuant to the Plan will not be able to recoup such property in subsequent distributions and will be deemed barred from any future claim in law or equity. If the distribution to any Holder of an Allowed Claim is returned as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Debtor is notified in writing of such Holder's then current address.

6.6     After Distributions Become Deliverable - The Debtor shall make all distributions that have become deliverable or have been claimed since the Effective Date as soon as practicable after such distribution has become deliverable.

6.7     Compliance with Tax Requirements - Any federal, state or local withholding taxes or amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All entities holding Claims shall be required to provide any information necessary to affect the withholding of such taxes.

6.8     Allocation of Plan Distributions Between Principal and Interest - To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of principal indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the claim, to the portion of such Claim representing accrued but unpaid interest.

6.9     Means of Cash Payment - Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Debtor, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Debtor.

6.10    Setoffs - The Debtor may, pursuant to §553 of the Bankruptcy Code or applicable non bankruptcy laws, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim or Litigation Claim that the Debtor may have against the Holder of such Claim, provided however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Litigation Claim that it may have against such Holder.

### ARTICLE VII
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Executory Contracts and Unexpired Leases

7.1.1   <u>The CAP Agreements</u> - On or about February and March 2021, CrossAmerica Partners LP and its affiliates LGP Realty Holdings LP, Erikson Oil Products, Inc., CAP Operations, Inc., Lehigh Gas Wholesale Services, Inc., and Lehigh Gas Wholesale LLC entered into the CAP Agreements including the PMPA Franchise and Fuel Supply Agreements (the "Supply Agreements"), Unitary Lease Agreements 00005 and 00006 (the "Leases") and other agreements with the Debtor.

The CAP Agreements are the subject of CrossAmerica Partners LP's *Motion for Entry of an Order Compelling Rejection of Agreements for Leased Stations or, Alternatively, Granting Relief from the Automatic Stay* [Docket No. 74] (the "<u>Rejection Motion</u>") requesting entry of an order compelling the rejection of the CAP Agreements pursuant to sections 365(a), 365(b), and 105(a) of the Bankruptcy Code, and the Debtor's *Motion to Approve Assumption of CrossAmerica Partners LP, CAP Operations, Inc., Lehigh Gas Wholesale, LLC, LGP Realty Holdings, LP, Lehigh Gas Wholesale Services, Inc., and Erickson Oil Products, Inc. Agreements* [Docket No. 206] (the "<u>Assumption Motion</u>"), seeking authority to assume the CAP Agreements pursuant to section 365(a) of the Bankruptcy Code.

On November 15, 16 and 17, 2023, the Court conducted and held an evidentiary hearing on the Assumption Motion and the Rejection Motion (collectively the "CAP Agreement Motions"). The CAP Agreement Motions have been fully briefed and have been taken under advisement and consideration by the Court for ruling (the "Court's Ruling"). The timing of the Court's Ruling is unknown. At issue in the CAP Agreement Motions are forty (40) Leased Stations which have significant value to the Debtor and its secured

Class 1(a) and Class 1(b) Claimants and Class 5 General Non-Priority Unsecured Creditors. The Debtor's Plan is premised on the assumption that the Debtor will prevail on its Assumption Motion and will be allowed to assume the CAP Agreements.

Pushback and, or Surrender of Leased Stations - Under this Plan the Debtor reserves the right to pushback and, or surrender one or more of the Leased Stations (the "Surrendered Leased Stations") to the CAP Entities. On or before the Effective Date the Reorganized Debtor will identify in writing those Leased Stations that it will pushback and surrender to the CAP Entities and provide notice to the CAP Entities thereof. Within sixty (60) days after the Effective Date the Reorganized Debtor will cease business operations and turn over possession of the Surrendered Leased Stations to the CAP Entities. Within ten (10) business days of the turnover of the Surrendered Leased Stations to the CAP Entities, the CAP Entities will payover and remit those portions of the CAP Security Deposit attributable to the Surrendered Leased Stations to the Reorganized Debtor. Within thirty (30) days after the Effective Date the Debtor and the CAP Entities will agree in writing to a procedure for the CAP Entities to pay the Reorganized Debtor sums equal to the value of the Surrendered Leased Stations' improvements, fuel inventories at cost and sixty-seven percent (67%) of the retail value of legal convenience store inventories. Net Proceeds of Sale of Surrendered Stations will be distributed pursuant to the Plan.

Sale of Leased Stations - Under this Plan the Debtor reserves the right to sell one or more of the Franchise Relationships, Leases, Supply Agreements, fuel, c-store inventories and improvements. Net Proceeds of Sale of Leased Stations will be distributed pursuant to the Plan.

7.1.2 Management Agreements - Between November 1, 2022, and March 1, 2023, the Debtor entered into substantially similar "Management and Operations Agreements" (the "Management Agreements") pursuant to which the counterparties to the Management Agreements (the "Management Companies") have several enumerated duties set forth therein. The Management Companies include: (1) 7 Mart Inc. pursuant to a Management Agreement dated December 1, 2022; (2) Ameer Investment Inc. pursuant to two separate Management Agreements dated November 1, 2022; (3) Areej Investment Inc. pursuant to a Management Agreement dated November 1, 2022; (4) F&M Stop Market LLC pursuant to a Management Agreement dated December 1, 2022; (5) Kareem Inc pursuant to two separate Management Agreements both dated November 1, 2022; (6) Kenan Ventures LLC pursuant to a Management Agreement dated March 1, 2023; (7) Leanne Investment LLC pursuant to a Management Agreement dated November 1, 2022; (8) Leanne Ventures LLC pursuant to a Management Agreement dated November 1, 2022; and (9) M&A 200 Inc. pursuant to a Management Agreement dated December 1, 2022. Ameer Investment, Inc., Areej Investment, Inc., Kareem, Inc., Kenan Ventures LLC, Leanne Investment, LLC, and Leanne Ventures LLC are owned by Munadel Rizek, the brother of Muwafak Rizek the Principal and Manager of IYS. 7 Mart Inc., F & M Stop Market LLC and M & A 200 Inc. are not owned by the Debtor or affiliated with the other management companies.

Subject to the Court's Ruling on the CAP Agreements Motions the Debtor will assume the Management Agreements as modified by agreement of the Debtor and the Management Companies. In the event the Court's Ruling on the CAP Agreements Motions adjudicates and determines that the Management Agreements are not curable non-financial defaults under the CAP Agreements the Management Agreements will be rejected as of the Effective Date.

7.1.3 Kemp Avenue and Sanborn Boulevard Purchase Agreements - On May 17, 2023, Erickson Oil Products, Inc. and Kareem Inc., as nominee of the Debtor, executed an Agreement of Sale (the "Kemp Avenue Agreement") for the purchase of the commercial property located at 223-225 West Kemp Avenue,

Waterton, South Dakota, 57201 (the "Kemp Avenue Property"), an Environmental Indemnity Agreement related to the Kemp Avenue Property was executed by Erickson Oil Products, Inc., Kareem, Inc. and the Debtor. (the "Kemp Avenue Environmental Agreement"); on May 17, 2023, Erickson Oil Products, Inc. and Kareem Inc., as nominee of the Debtor, executed an Agreement of Sale (the "Sandborn Boulevard Agreement") for the purchase of the commercial property located at 512 South Sandborn Boulevard, Mitchell Waterton, South Dakota, 57201 (the "Sandborn Boulevard Property"); and, an Environmental Indemnity Agreement related to the Sandborn Blvd Property was executed by Erickson Oil Products, Inc., Kareem, Inc. & Debtor. (the "Sandborn Boulevard Environmental Agreement"). The Debtor rejects the Kemp Avenue Agreement, Sanborn Boulevard Kemp Avenue Environmental Agreement, Kemp Avenue Agreement, Kemp Avenue Environmental Agreement. Within ten (10) business days after the Effective Date Erickson Oil Products, Inc. will payover and remit all earnest money deposits received pursuant to the Kemp Avenue Agreement and Sanborn Boulevard Agreement to the Reorganized Debtor.

7.1.4    <u>Volkswagen Motor Vehicle Lease</u> – The Volkswagen Motor Vehicle Lease with Volkswagen Credit shall be deemed rejected as of the date of the Confirmation Date.

7.1.5    Except as provided above, any other contract which is executory, in whole or in part, and which was originally executed prior to the filing of the Chapter 11 Petition, and to which the Debtor is a party, and has not been assumed, assigned, rejected or terminated during the pendency of the Chapter 11 proceedings or pursuant to the provisions of the Plan, shall be deemed rejected as of the Effective Date, in accordance with the provisions and requirements of §§365 and 1123 of the Bankruptcy Code.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND LITIGATION CLAIMS

8.1    Objection Deadline, Prosecution of Objections – Objections to the allowance of claims will be filed with the Court on or before sixty (60) days after the Effective Date. The Debtor shall be authorized to, and shall, resolve all Disputed Claims or Disputed Interests by withdrawing or settling such objections thereto, or by litigating to judgment (in the Bankruptcy Court or such other court having jurisdiction) as to the validity, nature and/or amount thereof. Objections to the allowance of claims filed on or after the Confirmation Date will be filed with the Court on or before ninety (90) days after the filing of such claim. Any claim filed later than one (1) year from the Effective Date of the Plan shall be disallowed and forever barred.

8.2    No Distributions Pending Objection - If any such objection is pending on any Distribution Date, then no distribution shall be made to such claimant until entry of a final and non-appealable Order resolving the claim objection and determining the validity and amount of such claim or interest. If any claim objection is pending on any Distribution Date, the Debtor shall continue to hold, for the claimants asserting such disputed claims, the amount that would be required to be disbursed thereto within the provisions of this Plan, as if each disputed claim were to be allowed in full. After entry of an Order allowing, in whole or in part, a claim which has been the subject of an objection, the Debtor shall disburse, not more than thirty (30) days following the entry of the Order allowing the claim, to the holder of such allowed claim the appropriate pro rata dividend withheld. Objections not filed within the time periods set forth herein shall be deemed waived and shall be forever barred.

8.3    Contingent and Unliquidated Claims - If any allowed claim contains a contingent and unliquidated amount, then no distribution shall be made to such claimant subject to the following. If any such claim exists on any Distribution Date, the Debtor shall continue to hold, for the claimants asserting such

contingent and unliquidated claim, the entire amount of the liquidated, contingent and unliquidated claim that would be required to be disbursed thereto within the provisions of this Plan, as if each contingent and unliquidated claim were to be allowed in full and until a "Final Claim" is filed. The Debtor shall disburse not more than thirty (30) days following the filing of such Final Claim" to the holder of such allowed claim the appropriate pro rata dividend withheld. Any "Final Claim" shall be filed no later than one (1) year from the Effective Date of the Plan or such contingent and unliquidated amounts of a claim shall be disallowed and forever barred.

8.4     Litigation Claims -

A. Prosecution of Causes of Action (Avoidance Actions, Litigation Claims and PMPA Adversary) - All such Causes of Action shall be prosecuted by the Debtor for the benefit of the Estate. Net Proceeds of Litigation Claims shall be distributed in accordance with the Plan.

B. Fees Relating to Causes of Action – After the Effective Date all fees, costs and expenses including but not limited to attorney fees, accountant fees, witness fees, expert witness fees, court reporting fees and filing fees incurred with respect to filing, prosecution and settlement of Causes of Action shall be paid from the proceeds from such Causes of Action and the remaining proceeds shall comprise and constitute the Net Proceeds of Litigation Claims.

## ARTICLE IX
## CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1     Conditions to Confirmation - The Debtor will not seek entry of the Confirmation Order unless and until the Confirmation Order is reasonably acceptable in form and substance to the Debtor.

9.2     Conditions to Effective Date - As a condition precedent to the occurrence of the Effective Date, the Confirmation Order confirming the Plan, as such Plan may have been modified, shall be in full force and effect and shall not have been vacated, modified or stayed, and if it is the subject of an appeal or reconsideration, no stay of the Confirmation Order shall be in effect.

9.3     Secured Claims Retention of Lien - Class 1 holders of allowed secured claims shall receive fair and equitable treatment with respect to each allowed secured claim provided for by the Plan, as follows: (a) either the holder of such claim has accepted the Plan, and shall receive the treatment specified herein; or (b) the holder of such claim retains the lien securing such claim and the value, as of the Effective Date of the Plan, of property to be distributed under the Plan on account of such claim is not less than the allowed amount of such claim; or, (c) the Debtor has surrendered the property securing such claim to such holder.

9.4     Completion and Consummation of Plan – The Plan shall complete and be consummated upon payment of the first Distributions required by the Plan; and upon consummation the Reorganized Debtor may seek to close the Chapter 11 case.

## ARTICLE X
## EFFECT OF PLAN CONFIRMATION

10.1    Binding Effect – The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns.

10.2    Litigation Claims - Vesting of Causes of Action - Pursuant to 11 U.S.C. §1123(b), the Debtor shall be vested with the right to prosecute all claims, demands, rights and causes of action that the Debtor or the Debtor's Estate may hold against any Person or Entity.

10.3    Term of Bankruptcy Injunction or Stays - All injunctions or stays provided for in the Bankruptcy Case under §§105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.4    Plan Injunction – The Plan and the Confirmation Order shall include, among other things, for a Plan Injunction that provides that from and after the Confirmation Date all entities and persons who have held, hold or may hold Claims against or Interests in the Debtor who had or were sent notice of these confirmation proceedings, their respective successors or assigns thereto, or anyone claiming under or through such holders are (i) **permanently enjoined from taking any of the following actions against the estate, property of the estate or the Debtor on account of any such claims or interests and (ii) preliminarily enjoined from taking any of the following actions against the estate, property of the estate or the Debtor on account of such claims or interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; (E) filing, serving or asserting any notice of termination, nonrenewal or other cessation of any contract, lease, franchise or other agreement based on any act, occurrence, event or combination thereof occurring in whole or part prior to the Effective Date; and (F) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such entities and persons from exercising their rights pursuant to and consistent with the terms of the Plan.  The Plan Injunction in this paragraph is a §1141 discharge.**  The Court shall have jurisdiction to determine and award damages to the Reorganized Debtor for any violation of such injunction including compensatory damages, professional fees and expenses and exemplary damages for any willful violation of said injunction, provided a copy of this injunction has been served on any party sought to be held in contempt of it.

10.5    Discharge - Except as otherwise provided in the Plan or in the Confirmation Order, the Confirmation Order acts as a discharge, effective as of the Confirmation Date, of any and all claims, obligations and debts of the Debtor which arose prior to the Confirmation Date, pursuant to 11 U.S.C. §1141(d)(1).  The Debtor's discharge shall be given full force and effect pursuant to 11 U.S.C. §524.

10.6    Any judgment heretofore or hereafter obtained in any court other than the United States Bankruptcy Court, for the Northern District of Illinois, Eastern Division, is null and void as a determination of the personal liability of the Debtor with respect to the following:

(a) debts dischargeable under 11 U.S.C. §523;

(b) unless heretofore or hereafter determined by order of this Court to be non-dischargeable, debts alleged to excepted from discharge under subsections (2), (4) and (6) of 11 U.S.C. §523(a); and,

(c) debts determined by the Court to be discharged.

# ARTICLE XI
# RETENTION OF JURISDICTION

Pursuant to §§105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or interests;

(b)     Resolve any matters related to the rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(c)     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(d)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on or after the Effective Date;

(e)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(f)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(g)     Upon motion and notice and for good cause shown, the Court may modify the Plan before or after the Effective Date pursuant to §1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order and/or contract, instrument, release or other agreement or document created in connection with the Plan, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, if permitted by Court order;

(h)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan.

(i)     Issue injunctions, enter and implement other orders or take such other actions as shall be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan, the Confirmation Order or the Plan Injunction;

(j)     Hear and determine Litigation Claims, including the PMPA Adversary.

(k)     Hear and determine matters concerning state, local and federal taxes in accordance with §§346, 505 and 1146 of the Bankruptcy Code;

(l)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

(m)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

(o)     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(p)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and,

(q)     Enter an order closing the Bankruptcy Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

12.1    Effectuating Documents and Further Transactions - The Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan.

12.2    Bar Dates for Administrative Claims - The Bar Date for filing Administrative Claims (not including Fee Claims) is sixty (60) days after the Effective Date.  Holders of asserted Administrative Claims that are subject to the Administrative Claims Bar Date shall submit requests for payment on or before such Administrative Claims Bar Date or forever be barred from doing so.

12.3    Payment of Statutory Fees - All fees payable pursuant to §1930 of title 28 United States Code shall be paid by the Debtor as and when they become due, until the Bankruptcy Case is closed.

12.4    Amendment or Modification of the Plan - Subject to §1127 of the Bankruptcy Code, the Debtor reserves the right, to alter, amend or modify the Plan, upon motion and notice and for good cause shown, at any time prior to or after the Confirmation Date, but prior to the substantial consummation of the Plan. A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

12.5    Severability of Plan Provisions - If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.6    Successors and Assigns - The Plan shall be binding upon and inure to the benefit of the Debtor, and its respective successors and assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

12.7    Revocation, Withdrawal or Non-Consummation – The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if confirmation or consummation of the Plan does not occur, then, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.8    Notice - All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

       To the Debtor

       IYS Ventures LLC

            , Illinois 6060
       ATTN: Muwafak Rizek

        and,

       Gregory K. Stern, Esq.
       53 West Jackson Boulevard
       Suite 1442
       Chicago, Illinois 60604
       Facsimile: (312) 427-1289
       Email:  greg@gregstern.com

12.9   Governing Law - Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a Plan Document, exhibit or schedule to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to any principles of conflicts of law of such jurisdiction.

12.10  Tax Reporting and Compliance – In connection with the Plan and all instruments issued in connection therewith and distributions thereof, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor is hereby authorized to request an expedited determination under §505(b) of the Bankruptcy Code of the tax liability of the Debtor for all taxable periods ending after the Petition Date through, and including, the Effective Date.

12.11  Schedules - All exhibits and schedules to the Plan are incorporated and are a part of the Plan as if set forth in full herein.

This Plan of Reorganization has been respectfully submitted on this 12th day of January 2024 by the Debtor.


Respectfully submitted:

IYS Ventures LLC


By:_____
        Muwafak Rizek, Managing Member


_____
Gregory K. Stern, Attorney for the Debtor




Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID #6216626)
Dennis E. Quaid (Atty ID #02267012)
Rachel S. Sandler (Atty. ID #6310248)
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558