AIN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IYS Ventures, LLC, | ) | Case No. 23-06782 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |
| | ) | |

## NOTICE OF MOTION

TO: See Attached Service List.

     PLEASE TAKE NOTICE that on **September 4, 2024 at 10:00 a.m. (prevailing Central Time)**, I will appear before the Honorable David D. Cleary, or any judge sitting in that judge's place, either in courtroom 644, 219 South Dearborn Street, Chicago, Illinois 60604, or electronically as described below, and present **Cross America Partners, LP's Motion to Allow and Compel Payment of Administrative Expense by Applying Debtor's Security Deposit to Satisfy Debtor's Obligations Under Assumed Agreements**, a copy of which is attached.

All parties in interest, including the movant, may appear for the presentment of the motion either in person or electronically using Zoom for Government.

**To appear by Zoom using the internet,** use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is 161 122 6457, and the password is Cleary644. The meeting ID and password can also be found on the judge's page on the court's web site.

  Dated: August 28, 2024.                     CROSSAMERICA PARTNERS, LP and
                                                   certain affiliates

                                                   By: */s/ Gordon E. Gouveia*
                                                        One of their attorneys

Gordon E. Gouveia (#6282986)
Peter C. Buckley (admitted *pro hac vice*)
Matthew R. Higgins (#6336039)
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, IL 60654
Tel: (312) 517-9200
ggouveia@foxrothschild.com

## CERTIFICATE OF SERVICE

I, Gordon E. Gouveia, certify that I caused a copy of the foregoing NOTICE OF MOTION and attached MOTION to be served on all persons set forth on the attached Service List identified as Registrants through the Court's Electronic Notice for Registrants and, as to all other persons on the attached Service List by mailing a copy of same in an envelope properly addressed and with postage fully prepaid and by depositing same in the U.S. Mail, on August 28, 2024.

By: */s/ Gordon E. Gouveia*

## SERVICE LIST
**Registrants Served Through the Court's Electronic Notice for Registrants**

Patrick Layng, United States Trustee
219 South Dearborn Street, Suite 873
Chicago, Illinois 60604

Gregory K. Stern
Gregory K. Stern, P.C.
53 West Jackson Blvd.
Suite 1442
Chicago, IL 60604

John J. Morgan
Barr & Morgan
2777 Summer St.
5th Floor
Stamford, CT 06905

William J. Serritella
Yeoeun C. Yoon
111 East Wacker Drive, #2600
Chicago, Illinois 60601

Daniel Scheeringa
4711 Golf Road, #200
Skokie, Illinois 60076

William K. Kane
321 North Clark Street
32nd Floor
Chicago, Illinois 60654

Ariel Weissberg, Counsel for:
Ameer Investment, Inc.;
Areej Investment, Inc.;
Kareem, Inc.;
Kenan Ventures, Inc.;
Leanne Investments, Inc.;
Leanne Ventures, Inc.; and
Marks Supermarket NC, Inc.
Weissberg and Associates, Ltd.
125 South Wacker Drive
Suite 300
Chicago, IL 60606

John Reding, Counsel for Illinois Lottery
Illinois Attorney General's Office
100 W. Randolph St., 13th Floor
Chicago, IL 60601

Miriam Stein Granek, Counsel for Itria Ventures, LLC
Gutnicki LLP
4711 Golf Road
Suite 200
Skokie, IL 60076

Kimberly Ross Clayson, Counsel for The Huntington National Bank
Taft Stettinius & Hollister LLP
27777 Franklin Rd. Suite 2500
Southfield, MI 48034

**Parties Served Via United States Mail**

IYS Ventures, LLC
15416 South 70th Court
Orland Park, Illinois 60462

Aramark Uniform Services
2334 South Michigan Avenue
Chicago, IL 60616

BMW Bank of North America, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

BMW Financial Services
Customer Service Center
PO Box 3608
Dublin, OH 43016-0306

Byzfunder NY, LLC
530 7th Avenue
Suite 505
New York, New York 10018

Coca-Cola Bottling Company
PO Box 105637
Atlanta, GA 30348

Fox Capital Group, Inc.
803 South 21st Avenue
Hollywood, FL 33020

Frito-Lay, Inc.
7700 Bulldog Drive
Summit Argo, IL 60501

Home State Security
250 East 5th Street
15 Floor
Cincinnati, OH 45202

M&M Service
315 East 15th Street
Covington, Kentucky 41011

Manistique Oil Company
216 Deer Street
Manistique, MI 49854

Marks Supermarket NC, Inc.
317 U.S. Highway 64 West
Creswell, North Carolina 27928

Mercedes Benz Financial Services
PO Box 5209
Carol Stream, IL 60197-5209

Nissan Motor Acceptance Corporation
Bankruptcy Department
P.O. Box 660577
Dallas, Texas 75266-0577

Pepsi Beverages Co.
2541 West 20th Avenue
Oshkosh, WI 54904

Red Bull Distribution Company
PO Box 204750
Dallas, TX 75320

Samson Funding
17 State Street
Suite 630
New York, New York 10004

U.S. Small Business Administration
409 3rd Street SW
Washington, DC 20416

We Energies
PO Box 2046
Milwaukee, WI 53201-2046

Wisconsin Department of Revenue
2135 Rimrock Road
Madison, WI 53713

Xcel Energy
PO Box 9477
Minneapolis, MN 55484-9477

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IYS Ventures, LLC, | ) | Case No. 23-06782 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |
| | ) | |

**CROSSAMERICA PARTNERS, LP'S MOTION
TO ALLOW AND COMPEL PAYMENT OF AN ADMINISTRATIVE
EXPENSE CLAIM BY APPLYING DEBTOR'S SECURITY DEPOSIT
TO SATISFY DEBTOR'S OBLIGATIONS UNDER ASSUMED AGREEMENTS**

CrossAmerica Partners, LP and certain of its affiliates[1] ("CAP"), by and through their attorneys, Fox Rothschild, LLP, hereby move ("Motion") for the entry of an order pursuant to 11 U.S.C. § 503(b) (i) allowing CAP's administrative expense claim for costs incurred due to Debtor's failure to perform repair, maintenance, and technology compliance requirements under franchise agreements it assumed and (ii) authorizing CAP to apply Debtor's security deposit to satisfy that claim. In support of its Motion, CAP states:

**PRELIMINARY STATEMENT**

1. The Debtor surrendered the Pushback Stations (as defined below) in a state of disrepair and CAP incurred substantial expenses in repairing the stations. Because the Debtor assumed the Franchise Agreements (as defined below) that govern the Debtor's obligations with respect to the Pushback Stations, such expenses constitute administrative expenses under § 503 of the Bankruptcy Code. Just as another landlord is entitled to apply its former tenant's security

---

[1] CAP affiliate Lehigh Gas Wholesale LLC is the fuel supplier under the Fuel Supply Agreements with Debtor. Debtor leases certain of its locations from the following CAP-affiliated landlord entities: LGP Realty Holdings LP, Erikson Oil Products, Inc., CAP Operations, Inc., Lehigh Gas Wholesale Services, Inc. and Lehigh Gas Wholesale LLC.

deposit to cover costs for which the tenant was responsible, CAP is entitled to apply Debtor's security deposit to the actual and necessary expenses incurred here.

2. Debtor assumed its agreements with CAP, including fuel supply agreements ("Fuel Supply Agreements"), unitary lease agreements ("Leases"), and proprietary marks agreements (collectively, "Franchise Agreements"), as well as a Security and Cross Default Agreement. *See* Docket Nos. 206, 554. Therefore, because the Franchise Agreements are unitary in nature, Debtor must comply with the Franchise Agreements with respect to every station Debtor has ever leased and currently leases from CAP.

3. The Security and Cross Default Agreement, attached as **Exhibit A**, allows CAP to apply the Debtor's security deposit to any debt owed under the Franchise Agreements related to any station and provides that Debtor's security deposit is "subject to the deduction for any sums due [CAP] with respect to each of the Related Agreements unpaid at the time of such termination or expiration."[2]

4. CAP became aware of such "sums due . . . [but] unpaid" when Debtor terminated and voluntarily "pushed-back" twenty-two (22) stations to CAP ("Pushback Stations") that needed maintenance, repair, and "chip card" technology Debtor was required to install three years ago.

5. Following Debtor's surrender of the Pushback Stations, CAP incurred $696,893.88 ("Debt") fulfilling the maintenance, repair, and technology compliance obligations that Debtor did not perform. An overview of the Debt and supporting invoices are attached collectively as **Exhibit B**.[3]

---

[2] Security and Cross Default Agreement, § 1, ¶¶ B & C; *see also id.* at p. 1 ("Related Agreements" includes the Fuel Supply Agreements, Leases, and proprietary marks agreements).

[3] Please note the amount of this Debt is slightly greater than the amount identified in the Security Deposit Itemized Summary attached as Exhibit B(1) to the *Disclosure Statement to CrossAmerica Partners LP's Chapter 11 Plan of Liquidation* [Docket No. 654] because the Security Deposit Itemized Summary used costs incurred, quotes,

7

6. CAP now requests permission to enforce its rights under the agreements Debtor assumed and apply the security deposit to satisfy the Debt.

## JURISDICTION AND VENUE

7. This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. §§ 157, 1334, and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

8. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9. The statutory predicate for relief is section 503(b) of title 11 of the United States Code ("Bankruptcy Code").

## BACKGROUND

10. In February and March 2021, Debtor and CAP executed the Franchise Agreements. On September 18, 2023, Debtor filed a motion to Assume the Franchise Agreements.[4] On April 4, 2024, the Court granted the Assumption Motion.[5]

11. Under the Franchise Agreements, CAP leased and supplied fuel to the Debtor at the Pushback Stations and continues to lease and supply fuel to the Debtor at the stations the Debtor currently operates.

12. The Franchise Agreements are unitary in nature. They govern all of the Debtor's obligations with respect to stations it currently operates and the Pushback Stations. In short, unless

---

and estimates as of August 13, 2024, and since that time actual costs and recently completed work have amounted to the Debt in this Motion.

[4] *See Debtor's Motion to Approve Assumption of CrossAmerica Partners, LP, CAP Operations, Inc., Lehigh Gas Wholesale, LLC., LGP Realty Holdings, LP., Lehigh Gas Wholesale Services, Inc., and Erickson Oil Products, Inc. Agreements* [Docket No. 206] ("Assumption Motion").

[5] *See Order Granting Debtor's Motion to Approve Assumption of CrossAmerica Partners, LP, CAP Operations, Inc., Lehigh Gas Wholesale, LLC., LGP Realty Holdings, LP., Lehigh Gas Wholesale* Services, *Inc., and Erickson Oil Products, Inc. Agreements* [Docket No. 554] ("Assumption Order").

and until the Debtor surrenders all its stations to CAP, Debtor remains liable for its obligations with respect to every station it has ever leased from CAP—including the Pushback Stations.

13. Pursuant to the Franchise Agreements, Debtor deposited $995,000 with CAP to secure obligations it owed CAP ("Security Deposit").

14. The Security Deposit is maintained pursuant to the Security and Cross Default Agreement. The Security and Cross Default Agreement is consistent with the unitary nature of the Franchise Agreements and provides that the Security Deposit "shall be returned to [Debtor] no later than 120 days following the termination or expiration of [the] last remaining Related Agreement, subject to the deduction for any sums due Lehigh with respect to each of the Related Agreements unpaid at the time of such termination or expiration."[6]

15. Before the Debtor surrendered the Pushback Stations in a state of disrepair, it had an obligation—at its sole expense—to regularly maintain, repair, and replace improvements, fixtures, buildings, equipment, property, etc., at the Pushback Stations.[7]

16. Debtor also agreed to make "expenditures or investments as may be reasonably required" by CAP to install certain technology at its stations, including "point of purchase equipment" and "credit and cash processing equipment and software."[8]

17. One of these technological requirements was installing point-of-purchase systems compliant with a new industry standard—known as the Europay, Mastercard and Visa ("EMV") standard—commonly referred to as "chip card" technology.

---

[6] Security and Cross Default Agreement, § 1, ¶ B.
[7] Leases, art. IV, §§ 4.1 & 4.3; *see also* Fuel Supply Agreements, art. V, § 5.4.
[8] Fuel Supply Agreements, art. V, § 5.12(b).

18. Debtor was required to have its fuel dispensers and ATMs compliant with the EMV industry standard by April 17, 2021 ("EMV Deadline").[9]

19. Well in advance of the EMV Deadline, CAP sent Debtor timely notice of Debtor's obligation to conform to the EMV industry standard, yet Debtor did not do so by the EMV Deadline or by the time it surrendered the Pushback Stations.

20. Debtor's failure to complete required EMV installations by the EMV Deadline shifted liability away from Visa and onto CAP, making CAP responsible for any counterfeit fraud losses at the fuel dispensers and ATMs at Debtor's stations.[10]

21. After Debtor surrendered the Pushback Stations, it had a post-termination obligation to "peaceably surrender to [CAP] the Property in broom-clean condition and in the condition and good repair as the Property existed on the Commencement Date, subject only to reasonable wear and tear."[11] Debtor's surrender of the Pushback Stations in states of disrepair with technology that did not comply with the EMV standard did not fulfill this obligation, putting Debtor in breach of the Franchise Agreements.

22. Pursuant to the Franchise Agreements, CAP is authorized to apply the Security Deposit to any debt owed to CAP by Debtor.[12] The Security and Cross Default Agreement provides that CAP may apply the Security Deposit to any of Debtor's indebtedness "without notice or demand . . . ."[13]

---

[9] *See Lucky U, LLC v. S&F Invs., LLC*, 2022 WL 105192 at *10 n. 19 (D. Conn. Jan. 11, 2022) (citing to *Visa Chip Card Technology for Merchants Overview,* Visa, https://usa.visa.com/run-your-business/small-business-tools/payment-technology/visa-chip-technology-merchants.html (last visited by the Court on Jan. 6, 2022) and noting that the liability shift policy for failing to upgrade to an EMV system for Automated Fuel Dispensers became effective on April 17, 2021).
[10] *Id.*
[11] Leases, art. III, § 3.5; *see also Mutual Franchise Termination Agreement (PMPA)*, ¶ 2 [Docket Nos. 386-1, 402-1, 410-1, 456-2, 465-1, 571-1, 574-1, 576-1] ("[N]othing in this Agreement shall be construed to relieve Franchisee of its post-termination or post-expiration obligations under the PMPA Agreement.")
[12] Fuel Supply Agreements, art. II, § 2.3; Leases, art. XII, §§ 2.2 & 12.2.
[13] Security and Cross Default Agreement, § 1, ¶ C(b).

23. Debtor also agreed to replenish the Security Deposit by the amount depleted.[14]

24. The Security and Cross Default Agreement defines "Security" as the entire Security Deposit and has no provision providing for a pro rata deduction for each station Debtor pushes back to CAP.[15]

25. CAP now seeks to apply the Security Deposit to the Debt.

## RELIEF REQUESTED

26. CAP respectfully requests the Court enter an order, in a form substantially similar to the form submitted herewith, pursuant to section 503(b) of the Bankruptcy Code (i) allowing CAP's administrative expense claim for the Debt and (ii) authorizing CAP to apply Debtor's Security Deposit to satisfy the Debt.

## ARGUMENT

27. CAP is entitled to the allowance and payment of the Debt as an administrative expense because Debtor assumed the Franchise Agreements with this Court's permission.

28. The United States Supreme Court has recognized that when a debtor assumes an executory contract, expenses and liabilities incurred thereunder are administrative expenses. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (U.S. 1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* . . . and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citing 11 U.S.C. § 503(b)(1)(A)); *see also In re Midway Airlines, Inc.*, 221 B.R. 411, 448 (Bankr. N.D. Ill. 1998) ("A claim arising under an executory contract assumed during a bankruptcy case constitutes an administrative expense entitled to priority under

---

[14] Security and Cross Default Agreement, § II; *see also* Leases, art. XII, § 12.6; Fuel Supply Agreements, art. IX, § 9.3(b).
[15] Security and Cross Default Agreement, § 1, ¶ A.

§ 503(b)(1)"); *In re Nat'l Steel Corp.*, 316 B.R. 287, 304 (Bankr. N.D. Ill. 2004) ("If a debtor-in-possession assumes an executory contract, 'it assumes the contract *cum onere*,' and the liabilities incurred in performing the contract will be treated as administrative expenses under § 503(b)(1)(A)") (citing *Bildisco*, 465 U.S. at 531–32).

29. Here, Debtor assumed the Franchise Agreements, so the Debt it owes CAP should be allowed as an administrative expense. *See, e.g.*, *Bildisco*, 465 U.S. at 531–32 (U.S. 1984).

30. Debtor's estate benefitted from the Debtor's continued operation of the Pushback Stations for four to seven months after it decided to assume the Franchise Agreements despite being in breach of its maintenance, repair, and technology compliance requirements under the Franchise Agreements. *Compare* Assumption Motion and Assumption Order (assuming Franchise Agreements) *with* orders authorizing pushback [Docket Nos. 392, 408, 431, 460, 486, 584, 585, 586] (surrendering Pushback Stations).

31. Debtor's estate currently benefits from the Debtor's continued operation of stations under the Franchise Agreements even though it has breached those agreements by surrendering the Pushback Stations without having satisfied its maintenance, repair, and technology compliance requirements as set forth above. CAP could have sought to terminate the Franchise Agreements given the Debtor's breach, but instead simply did the work Debtor did not.

32. The expenses CAP incurred fulfilling Debtor's obligations under the Franchise Agreements are comprised of reasonable expenses incurred following arms-length bargaining with third parties who performed the work Debtor failed to do in maintaining and repairing the Pushback Stations as well as installing the EMV technology.

## RESERVATION OF RIGHTS

33. CAP reserves all rights with respect to Debtor, its affiliates, and other parties. Nothing herein shall be considered a waiver or release of any rights, claims, or defenses that CAP or its affiliates may have against anyone, including but not limited to Debtor and its affiliates. CAP reserves its rights to amend, supplement, or revise this Motion; to amend, supplement, or revise any amounts stated as due for maintenance, repair, and technology compliance expenses owed under the Franchise Agreements; and to seek the allowance and payment of additional administrative expenses.

## CONCLUSION

**WHEREFORE**, CAP respectfully requests the Court enter an order, in a form substantially similar to the form submitted herewith, pursuant to section 503(b) of the Bankruptcy Code (i) allowing CAP's administrative expense claim for the Debt and (ii) authorizing CAP to apply Debtor's Security Deposit to satisfy the Debt.

Dated: August 28, 2024

CROSSAMERICA PARTNERS, LP and certain affiliates

By: */s/ Gordon E. Gouveia*
    One of their attorneys

Gordon E. Gouveia (#6282986)
Peter C. Buckley (admitted *pro hac vice*)
Matthew R. Higgins (#6336039)
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, IL 60654
Tel: (312) 517-9200
ggouveia@foxrothschild.com