## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| IYS VENTURES, LLC, | ) | Case No. 23-06782 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |
| | ) | U.S. Bankruptcy Judge |

**DEBTOR'S OBJECTIONS TO THE ADEQUACY OF DISCLOSURE STATEMENT FILED BY CROSSAMERICA PARTNERS, LP**

Now comes IYS VENTURES, LLC by and through its attorney Gregory K. Stern, Monica C. O'Brien, Dennis E. Quaid and Rachel S. Sandler and in support of its Objections to the Adequacy of Disclosure Statement filed by CrossAmerica Partners, LP, states as follows:

**INTRODUCTION**

CrossAmerica Partners, LP ("**CAP**") has filed its Plan of Liquidation (the "**Liquidation Plan**" or "**Plan**") and Disclosure Statement (the "**Disclosure Statement**") and now seeks approval of the Disclosure Statement as containing adequate information concerning its Plan and the contemplated liquidation of the assets of IYS. CAP's Disclosure Statement is wholly insufficient and cannot be approved as containing information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about CAP's Plan. Rather CAP's

1

Disclosure Statement reads like and advances arguments[1] that are really objections to the Debtor's proposed Plan of Reorganization, not a disclosure statement containing adequate information.

The Liquidation Plan submitted by CAP is its latest and most transparent attempt to escape responsibility for its actions during the pendency of the Debtor's Chapter 11 Case. CAP's Liquidation Plan seeks to gloss over, hide and ignore the harm ad damages that CAP has already caused to the assets and business operations of the Debtor, the value of those assets and business operations and any repayment to not only the more than $25,000,000.00 of unsecured creditor claims, but to all creditors including administrative, priority and secured creditors. Moreover, and inexplicably the Plan provides CAP with a release of liability for its wrongful actions and the resulting harm and damages to the Debtor, its estate and general unsecured non-priority unsecured creditors. Releases that are neither justified or permitted by statute, legal precedent or the underlaying facts.

CAP seeks to achieve through its Liquidation Plan what it has otherwise been unable to accomplish in this Chapter 11 Case in completing its hostile and illegal takeover and recapture of the remaining marketing premises that it leases to the Debtor and with contumacious disregard to the costs, harm and damages to the Debtor, its estate and creditors. The remaining marketing premises leased from CAP are the core of the Debtor's right-sized, reorganized and restructured business operations that are necessary and needed to fund repayments to creditors. The liquidation vehicle CAP has chosen to complete and fulfill its stated corporate objective *vis a vis* the elimination of dealers or multiple service operators such as IYS Ventures, LLC is to close the

---

[1] See, Disclosure Statement sections including but not limited to the Introduction section on pages 1,2 and 3 and footnote 1 wherein CAP improperly states that "The Debtor's Disclosure Statement falsely states that the Debtor…" section vii Failure to Pay Lease Obligations, page 11, section ix The Debtor's Plan of Reorganization and Disclosure

business operations of the Debtor and liquidate its assets through the Plan.

CAP's litigation tactics are to propose an ill-conceived and ill-formulated Plan that is inherently and patently unable to be confirmed. The Liquidation Plan's defects although generally reserved for the plan confirmation process, cannot be ignored in the context of a Disclosure Statement that is required to provide "adequate information" to enable a hypothetical holder of an unsecured claim to make an informed judgment about the Plan and whether or not that hypothetical creditor would accept or reject the Plan. Where, as in the instant Chapter 11 Case, a plan is simply unconfirmable, the disclosure statement cannot be approved and does not contain the adequate information required by § 1125. CAP's Plan is unconfirmable and its Disclosure Statement cannot not be approved due to its omission of adequate information.

CAP's Liquidation Plan is not only illusory but also inherently and patently unconfirmable and has been unreasonably and vexatiously interposed. The Liquidation Plan **(i)** was not proposed in good faith, **(ii)** incorrectly and improperly classifies claims, **(iii)** impermissibly seeks to gerrymander voting classes as non-impaired when clearly impaired, **(iv)** contains false and incorrect information and assumptions relating to the Debtor's assets and operations, and **(v)** resolves Debtor's claims for refund of security deposits and other damages relating to adversary proceedings filed by the Debtor against CAP seeking substantial damages in excess of one million dollars ($1,000,000.00) through improper and impermissible releases in favor of CAP as the Plan proponent.

## CAP'S DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125

Approval of a Disclosure Statement is the initial step in the Chapter 11 plan confirmation

---

Statement, page 14,

process leading to a binding and confirmable plan that serves the best interests of all creditors. "11 U.S.C. § 1125(b) is clear that solicitation of votes cannot occur unless an approved disclosure statement has been transmitted to those who will vote." *In re St. Margaret's Health - Peru*, 659 B.R. 691, 695 (Bankr. N.D. Ill. 2024).

> 11 U.S.C. § 1125(b) frames the requirements for disclosure and solicitation in chapter 11 cases. Pursuant to § 1125(b): An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing *adequate information*. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets. *Id.* at 695-96.

> The Bankruptcy Code defines adequate information as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. *Id.* at 695 citing 11 U.S.C. § 1125(a).

"[A]cceptances or rejections of plans may not be solicited unless an approved disclosure statement is transmitted to holders of claims or interests with that plan." *Id*. at 697. While the court may conditionally approve the disclosure statement, "participants in the case should have the chance to review the proposed disclosure statement, raise potential objections with the plan proponent, negotiate necessary changes, and present a 'cleaner,' amended disclosure statement for judicial approval." *Id*. at 700 (quoting *In re Amster Yard Assocs.*, 214 B.R. 122, 125 (Bankr. S.D.N.Y. 1997).

Instead of the requisite "Adequate Information" CAP's Disclosure Statement is replete

with false, inaccurate and incorrect self-serving statements and arguments against IYS' proposed Plan of Reorganization that include, *inter alia*, the following:

> **i)** that IYS is responsible for paying from its $995,000.00 Security Deposit for alleged maintenance and repairs enumerated on Exhibits B-1 and B-2 to the Disclosure Statement when the maintenance and repairs are either not required or constitute the contractual obligations of CAP rather than the contractual obligations of IYS
>
> **ii)** inaccurate statements relating to the Debtor's financial performance incurring losses and "bouncing" payments to CAP and failure to disclose that those operating losses and "bounced" payments to CAP were caused by the wrongful actions of CAP in accelerating IYS' payment date of expenses owed to CAP to the date of delivery or one day thereafter in violation of the three or four day creditor terms provided to IYS and CAP's delaying transfer *via* sweeps to IYS of its funds
>
> **iii)** that the Professional Fees incurred by the Debtor as Debtor in Possession have been unnecessary and unwarranted[2] notwithstanding CAP's actions in the Chapter 11 Case including but not limited to forcing a three (3) day trial before this Court on a nonexistent bankruptcy remedy of compelling rejection of the CAP leases and agreements which is neither authorized by applicable statute or legal precedent

The Debtor firmly believes and asserts that it is entitled to the refund on a *pro rata* basis of the Security Deposit of $995,000.00 and recovery of damages in substantial amounts from CAP for its wrongful actions enumerated in the two pending Adversary complaints against CAP.

## CAP'S PLAN IS INHERENTLY AND PATENTLY UNCONFIRMABLE

The Liquidation Plan proposed by CAP is inherently and patently not confirmable. Consequently the Disclosure Statement cannot be approved as containing adequate information to enable a hypothetical investor to make an informed judgment regarding the Plan in contravention of 11 U.S.C. § 1129(a)(1) and 11 U.S.C. § 1125(a)(1). "[D]isapproval of the adequacy of a disclosure statement may sometimes be appropriate where it describes a plan of reorganization which is so

---

[2] Orders awarding interim compensation for professional fees have been entered by the Court in favor of accountants, attorneys and other and inherent within those awards are findings that the interim compensation awarded was for reasonable and necessary services rendered to the Debtor as Debtor in Possession

fatally flawed that confirmation is impossible." *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990). See also *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989)("[W]here the disclosure statement *on its face* relates to a plan that cannot be confirmed does the court have an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan . . . Allowing a facially nonconfirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation.")(internal citation omitted); *In re Unichem Corp.*, 72 B.R. 95, 98 (Bankr. N.D. Ill.), *aff'd*, 80 B.R. 448 (N.D. Ill. 1987)("Although the issue of whether a plan meets the requirements of § 1129(a) is usually reserved for the hearing on confirmation, in certain circumstances it is appropriate for the court to consider the issue at the hearing on the disclosure statement. One such circumstance is where it is readily apparent that the plan accompanying the disclosure statement could never legally be confirmed."). If the plan does not comply with § 1129, "it is incumbent upon the Court to decline approval of the disclosure statement and prevent diminution of the estate." *In re R & G Properties, Inc.*, No. 08-10876, 2009 WL 2043873, at *4 (Bankr. D. Vt. July 6, 2009)(internal citation and quotations omitted).

Here, CAP's Plan cannot be confirmed as a matter of law for, *inter alia*, the following reasons:

(**1**)  CAP is granted impermissible releases and unilateral dismissals of the Debtor's Adversary Proceedings seeking damages from CAP without any factual basis or compensation whatsoever, as well as failing to disclose CAP's inherent conflict and self-interest in its Plan disposing of valuable actions against CAP for no consideration;

(**2**)  CAP use of its Plan to set off the Debtor's $995,000.00 Security Deposit against alleged and unsupported maintenance and repair expenses which are either not required to be made or CAP's contractual obligations and expense to make and are part of the Adversary Proceeding case number 24-AP-00088 pending against CAP; and

(**3**)  CAP incorrect classification of secured claims as "Unimpaired" and gerrymandered for the purpose of depriving secured creditors of their right to vote to accept or reject CAP's

Plan.

**CAP's Liquidation Plan was not Proposed in Good Faith but Rather Unreasonably and Vexatiously Interposed to Multiple Proceedings in IYS' Chapter 11 Case**

CAP's Liquidation Plan fails to meet the good faith requirement of 11 U.S.C. § 1129(a)(3) and cannot be confirmed as more fully discussed and set forth herein.

Ordinarily, confirmation issues are reserved for the confirmation hearing, and not addressed at the disclosure statement stage. [However,] [c]ourts have recognized that if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 153–54 (3d Cir. 2012)(internal citations and quotations omitted); *see also Id.* at 154 (providing a list of similar cases where a court disapproves of a disclosure statement on the basis that the plan is not confirmable). *See also In re Spiegel*, No. 20BK21625, 2024 WL 4100864, at *23 (Bankr. N.D. Ill. Sept. 5, 2024)(Judge Timothy A. Barnes)(find that the Debtor did not propose his plan in good faith). "The rationale is that the court's equitable powers under 11 U.S.C. § 105 surely enable it to control its own docket and thus, a court should not proceed with the time-consuming and expensive proposition of hearings on a disclosure statement and plan when the plan may not be confirmable because it does not comply with confirmation requirements." *In re Am. Cap. Equip., LLC*, 688 F.3d at 154 (internal citation and quotations omitted).

A "bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *In re Am. Cap. Equip., LLC*, 688 F.3d at 154.

"The proponent of the plan bears the burden of establishing that each requirement set forth in § 1129(a) has been met." *In re Multiut Corp.*, 449 B.R. 323, 332 (Bankr. N.D. Ill. 2011)(internal citation and quotation omitted). "The proponent must meet its burden by a preponderance of the evidence." *Id*. Pursuant to 11 U.S.C.A. § 1129(a)(3), the court shall confirm a plan only if "[t]he plan has been proposed in good faith and not by any means forbidden by law." While "good faith" is not defined by the Bankruptcy Code, it has generally been interpreted to "mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Multiut Corp.*, 449 B.R. at 341 (Bankr. N.D. Ill. 2011)(internal citation and quotation omitted). "In evaluating whether a plan has been proposed in good faith, the focus of the inquiry is the plan itself, which must be viewed based on the totality of the circumstances surrounding the development and proposal of that plan." *Id*.

"The Seventh Circuit has produced a non-exclusive list of factors embodied in its 'totality of the circumstances' test to consider in determining good faith in Chapter 13 cases. They include (1) whether the plan states secured and unsecured debts accurately; (2) whether expenses are accurately disclosed; (3) whether the percentage distribution to unsecured claimants is accurate; (4) whether inaccuracies in the plan amount to an attempt to mislead the court; and (5) whether the proposed payments show fundamental fairness in dealing with one's creditors." *In re Multiut Corp.*, 449 B.R. at 342 (citing numerous Seventh Circuit cases).

**CAP's Disclosure Statement Fails to Disclose That CAP's Plan is Fatally Defective Due to CAP's Conflict in Interest and Unilateral Settling of Claims Asserted by the Debtor Against CAP in Adversary Proceeding Case Numbers 23-AP-00392 and 24-AP-00088**

IYS has filed two adversary actions against CAP and related entities that are pending before this Court.

Adversary 23-ap-00392 charges several acts committed by CAP that constitute violations of the protections afforded to IYS by the Federal Petroleum Marketing Practices Act ("**PMPA**"). IYS seeks relief, *inter alia*, including injunctions against CAP, declarations of the wrongful actions of CAP under federal and state laws and damages in amounts determined at trial.

The second multi-count adversary complaint assigned case number 24-ap-00088 seeks damages and other relief for **i)** CAP's violations of the automatic stay provisions of 11 U.S.C. Section 362 of the Bankruptcy Code, **ii)** CAP's breach of its obligations under the CAP leases and agreements existing between the parties, **iii)** CAP's tortious interference with the Debtor's business by, *inter alia*, accelerating the due dates of CAP's bills to IYS, delaying payment via the sweeps of IYS's net cash flow back to IYS, communications with vendors resulting in closed accounts, communications state and local licensing agencies resulting in the wrongful termination of IYS licenses and granting new licenses to CAP for the Debtor's stations, communications and interference with individuals employed in the operation of the Debtor's

marketing sites. Damages of at $10,000,000.00 plus punitive damages of $5,000,000.00 together with injunctive relief to stop CAP's predatory actions are sought in the case number 24-ap-00088.

The Liquidation Plan proposed by CAP provides for the dismissal with prejudice of both adversary complaints that CAP contends are without merit and of no value to the Debtor's estate. No explanation or factual basis has been offered to justify the dismissal with prejudice of the adversary complaints nor is payment of compensation or any other consideration contemplated in exchange for the releases. Therefore, valuable assets and causes of action of the IYS bankruptcy estate will be disposed of on the sole basis that the defendant, CAP, does not believe that there is any merit in the adversary complaints. CAP's outrageous self-serving action and proposal lacks transparency and is being done without CAP addressing, admitting or discussing its inherent conflict of interest relating to the Adversary Proceedings and the permanent dismissal of the Adversary Proceedings by CAP, the defendant, in those adversary proceedings.

Bankruptcy procedures require the introduction of evidence of the fairness of settlements involving the estate and any resulting releases. The recent decision of the Supreme Court in *Harrington v. Purdue Pharma*, *LP*, 603 US ___ (2024) demonstrates the need for concern for the proper procedures to be followed in bankruptcy cases, especially in regard to dealing with the rights of creditors or claimants without either the consent or informed consent of those creditors. CAP ignores the need and requirements of transparency and to inform unsecured creditors of the issues involved in the Adversary Proceedings and provide evidence in support of its proposed dismissal with prejudice of the Adversary Proceedings pending against it.

While CAP states that it will present evidence at the confirmation hearing in support of

the dismissal of those actions, that offer is a day late and a dollar short. Creditors will have voted to accept or reject CAP's Plan of Liquidation and, or IYS' Plan of Reorganization before the promised testimony is provided. Creditors need to see the factual justification and evidence **BEFORE** they vote. Anything later deprives creditors of receiving the requisite "adequate information" that is required under Section 1125 and makes a mockery of the disclosure statement process and requirement for "adequate information." Creditors are entitled to nothing less and CAP's Disclosure Statement cannot be disseminated to creditors because it does not include "adequate information."

It is a matter of public information and record that CAP seeks to change its business model from dealer-operated stations to CAP employee-operated stations. CAP's strategy throughout the pendency of the Debtor's Chapter 11 case has been to run IYS, a multiple service operator ("MSO"), out of business by whatever means possible, including *inter alia*, depriving IYS of its operating cash flow, tortiously interfering with IYS' relationships with its vendors, utility providers, licensing bodies and employees so that CAP can recapture and regain the Debtor's leased marketing premises for ITS operations through its retail division under the "Joe's Kwik Mart" brand.

CAP seeks to out-vote the Debtor in confirming its Plan of Liquidation as opposed to fighting the merits of Adversary Cases 23-00392 and 24-00088, valuable assets and causes of action of IYS against CAP. Creditors should not be tricked by deceptive, inadequate and misleading information contained in CAP's Disclosure Statement.

**CAP's Disclosure Statement Fails to Disclose CAP's Impermissible Plan Classification and Gerrymandering of Classes of Secured Creditors to Deprive Secured Creditors of the Right to Accept or Reject CAP's Plan**

CAP's Plan improperly, incorrectly and mistakenly classifies the claims of secured creditors, including but not limited to, Itria Ventures, LLC ("**Itria**") (Class 1(a)) and The Huntington National Bank ("**Huntington**")(Class 1(b)) and all Class 2 creditors as unimpaired and therefore not entitled to vote to accept or reject CAP's Plan  The effect of the designation of those classes as "not impaired" deprives those secured classes of the right to vote to accept or reject CAP's Plan.  CAP's classification of these secured claims as "not impaired" is improper and incorrect.  The proposed treatment and repayment to those creditors is not only vague and illusory but clearly renders the treatment of all secured claims as "impaired" and not "unimpaired."  The Plan promises <u>either</u> payment in full or return of the collateral to those creditors, the choice solely being CAP's decision.  Anything less that payment in full on or before the effective date of the Plan results in impairment of that class, and the return of collateral renders a class as impaired not unimpaired.  There is no assurance or requirement in CAP's Liquidation Plan that CAP will pay the claims of Itria and Huntington anything on its effective date, let alone in full.  CAP may choose the option to return to Itria and Huntington their respective collateral instead of paying the full amounts of those secured claims resulting in the impairment of those secured classes.

Similarly, Huntington had two rights. First, Huntington had an attachment order to be executed against the assets of IYS.  The order was never executed.  The second claim of Huntington was a security interest in several motor fuel dispensers installed in various marketing premises leased by IYS.  Neither basket of collateral of Huntington can be returned.

The illusory nature of CAP's Plan is further evidenced in the opt out provision in section 9.3 of the Plan which allows CAP to back out of consummating the Plan in the event that

complications arise that CAP does not want to deal with. Therefore, nothing may ever happen under CAP's Plan other that the dismissal of the two Adversary Proceedings which is not adequately described and detailed in CAP's Disclosure Statement.

**CAP'S DISCLOSURE STATEMENT FAILS TO DISCLOSE CAP'S CONTESTED ADMINISTRATIVE CLAIM MOTION WHEREIN CAP SEEKS TO RECOVER COSTS OF MAINTENANCE AND REPAIRS THAT ARE EITHER NOT REQUIRED OR CONSTITUTE CAP'S CONTRACTUAL OBLIGATION FROM DEBTOR'S $995,000.00 SECURITY DEPOSIT**

CAP enumerates miscellaneous maintenance and repair charges in Exhibits B-1 and B-2 to the Disclosure Statement. These same Exhibits are attached to and a part of *CrossAmerica Partners, LP's Motion to Allow and Compel Payment of Administrative Expenses by Applying Debtor's Security Deposit to Satisfy Debtor's Obligation Under Assumed Agreements* (the "Administrative Claim Motion"). Not surprisingly, the administrative expense claim sought by CAP in the Administrative Claim Motion exceeds the Debtor's obligations under the Leases to repair and maintain the condition of the marketing premises including equipment provided by CAP "in the condition and good repair as the Property existed on the Commencement Date, subject to reasonable wear and tear." *Unitary Lease*, par. 3.5.

Exhibit B-1 seeks recovery for alleged repairs to "pushback" stations formerly leased by IYS from CAP and returned to CAP. The alleged maintenance and repairs itemized in Exhibit B exceed maintenance and repair requirements and constitute upgrades and improvements to the original condition of the "**Pushback Stations**" for which the Debtor has absolutely no contractual obligation to pay. CAP may improve and upgrade the condition of these "Pushback Stations" as it wishes but it must do so at its own expense. IYS has no such obligation or financial responsibility under the Leases to improve the condition of the premises from the

condition existing when they were leased to IYS. Therefore, the Security Deposit should not be sacrificed to CAP's intent to improve the "Pushback Stations" that it now intends to operate as company-owned stations. CAP's Disclosure Station does not contain "adequate information" due to the inclusion of CAP's erroneous statements concerning the Debtor's obligations to pay for repairs or maintenance to the pushback stations and to invade the $995,000.00 Security Deposit of the Debtor to pay for such improvements.

Several of the maintenance and repair items appearing on Exhibit B to the Administrative Claim Motion constitute upgrades over and above the grade of lighting contained in the marketing premises as of the commencement of the Leases such as LED lights or bulbs. Other disputes and objections regarding CAP's alleged administrative expense claim include, *inter alia*, (*i*) HVAC expenses of $39,700.00 (Exhibit B, page 14), $162, 69.62 (Exhibit B, page 64) and $13,367.66 (Exhibit B, page 70, (*ii*) CAP seeks for the non-IYS Lombard marketing premises (Exhibit B, page 16), expenses of $102,797.00 for a station which has never been an IYS station, (*iii)* pump upgrades for which IYS has no contractual obligation (Exhibit B, page 19), and (*iv)* Galaxy Group invoices totaling $288,849.00.

CAP fails to disclose that the Debtor made repeated demands and requests for it to fulfil its obligations under the Leases to make many of these necessary repairs that CAP was obligated to make. In virtually all instances, CAP never made the required repairs under the Leases but these very repairs are those on Exhibit B another fact the CAP fails to properly disclose. CAP is now wrongfully attempting to shift the economic burden of those long neglected repairs onto the Debtor without requisite disclosures and without any basis in fact or law.

Exhibit B includes invoices from suppliers for the alleged repairs or equipment

purchased. Invoices are only one facet of a project to make such alterations or repairs or to purchase needed equipment. Purchase orders, proof of performance of completion of the work and proof of payment of the invoices are all necessary to complete the documentation. CAP should be required to give significantly more disclosures and information regarding these maintenance and repair expenses that are the subject matter of an Adversary Proceeding and CAP's Administrative Claim Motion. Disclosures and information that CAP will be required to produce all relevant documents relating to the alleged work during discovery already propounded in the Adversary Proceeding.

Once again CAP states its biased version of the story as if it was a universal truth. It is not and certainly fails to meet the standards of "Advequate Information" requires in a disclosure statements. IYS will not be deceived by CAP's false narrative, nor should creditors. CAP's Disclosure Statement contains inadequate information regards all matters relating to, *inter alia*, maintenance and repair expenses, the Security Deposit, the Adversary Proceeding and CAP's Administrative Claim Motion and cannot be approved for dissemination to creditors.

**CAP'S DISCLOSURE STATEMENT CONTAINS FALSE AND INCORRECT STATEMENTS OF FACTS RELATING TO THE DEBTORS ALLEGED OWNERSHIP OF THE FUEL AND CONVENIENCE STORE INVENTORY IN STATIONS OWNED BY FREEDOM MEDICAL, LLC AND THE DEBTOR'S FINANCIAL PERFORMANCE**

"Because the knowledge of a debtor's financial condition is essential before any informed decision concerning the merits of a chapter 11 plan can be made, it is vital, if not a prerequisite, that a description of available assets, their value, and certainly their ownership be disclosed under § 1125." *In re Dakota Rail, Inc.*, 104 B.R. 138, 147 (Bankr. D. Minn. 1989)

CAP's Disclosure Statement states that CAP proposes to fund its Plan through the sale of the fuel and convenience store inventory contained in the nine (9) stations owned by Freedom

Medical, LLC ("Freedom"). The Debtor has no rights of ownership or the ability to sell the assets of a third party, such as Freedom. Freedom paid good and valuable consideration for the nine (9) stations it purchased from IYS. The Debtor has no rights, ownership or leasehold, in the nine (9) stations, or Freedom's fuel and convenience store inventory. Consequently, any inclusion of false and incorrect information cannot ever be deemed "adequate information" and approved as adequate for dissemination in a Disclosure Statement.

Further errors inadequate and incorrect statements and omissions relating to the Debtor's financial condition and creditor claims in CAP's Disclosure Statement include but are not limited to the following:

> The amount of the priority tax claim of the State of Ohio is not $321,370.52.
>
> The amount of the Class 2(a) claim of Mercedes Benz is not $134,326.75.
>
> The CAP's Disclosure Statement incorrectly classifies a secured claim as 2(b) for BMW Bank of North America as $258,800.67. The collateral of BMW has been surrendered to it and it will have only an unsecured claim for its deficiency but not a secured claim.
>
> Ally Bank does not hold a secured 2(c) claim in the amount of $30,433.86. The collateral of Ally Bank has been surrendered.
>
> That Pepsi has a Priority Claim under section 503(b)(9) of $25,747.02.
>
> That IYS has any ownership or leasehold interest in the fuel and convenience store inventory owned by Freedom Medical, LLC. See above.

WHEREFORE, IYS Ventures, LLC prays for an order denying approval of CAP's Disclosure Statement for the reasons set forth herein and as not containing accurate and adequate information and for such other further relief as this Court deems just.

By: /s/ Gregory K. Stern
     Gregory K. Stern

Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID #6216626)
Dennis E. Quaid (Atty ID #02267012
Rachel S. Sandler (Atty ID #6310248)
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558