**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| IYS Ventures, LLC, | ) | Case No. 23-06782 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |
| | ) | |

**REPLY IN SUPPORT OF CROSSAMERICA PARTNERS, LP'S
MOTION TO ALLOW AND COMPEL PAYMENT OF ADMINISTRATIVE EXPENSE
BY APPLYING DEBTOR'S SECURITY DEPOSIT TO SATISFY DEBTOR'S
OBLIGATIONS UNDER ASSUMED AGREEMENTS**

CrossAmerica Partners LP and certain of its affiliates[1] (collectively, "CAP"), by and through its attorneys, submits this reply (this "Reply") in support of *CrossAmerica Partners, LP's Motion to Allow and Compel Payment of Administrative Expense by Applying Debtor's Security Deposit to Satisfy Debtor's Obligations Under Assumed Agreements* [Docket No. 661] (the "Motion") and in response to the *Debtor's Objection to CrossAmerica Partners, LP's Motion to Allow and Compel Payment of Administrative Expense by Applying Debtor's Security Deposit to Satisfy Debtor's Obligation Under Assumed Agreements* [Docket No. 667] (the "Objection")[2] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Debtor argues that CAP should have brought its request for payment of administrative expenses in the Adversary Proceeding because (1) Bankruptcy Rules 3007(b) and

---

[1] CAP affiliate Lehigh Gas Wholesale LLC is the fuel supplier under the Fuel Supply Agreements with the Debtor. The Debtor leases certain of its locations from the following CAP-affiliated landlord entities: LGP Realty Holdings LP, Erikson Oil Products, Inc., CAP Operations, Inc., Lehigh Gas Wholesale Services, Inc. and Lehigh Gas Wholesale LLC.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or the Objection, as applicable.

1

7001 require the Motion to have been brought by adversary proceeding, (2) the Motion creates duplicative litigation, and (3) the Motion amounts to improper claim splitting. The Debtor also denies that the expenses requested in the Motion are the Debtor's responsibility under the Franchise Agreements.

2. The Debtor does not contest the validity or amount of any of the expenses requested in the Motion. The Debtor only asserts that such expenses are not the Debtor's responsibility under the Franchise Agreements. Because the Debtor only disputes the procedural propriety of the Motion and whether the Debtor is responsible for the expenses requested in the Motion, the only disputed issues for the Court to decide are (1) whether the Motion could and should have been brought in the Adversary Proceeding, and (2) whether the Franchise Agreements assign responsibility to the Debtor for the expenses requested in the Motion.

3. With respect to the first issue, bringing a request for payment of administrative expenses in an adversary proceeding is not authorized or permitted by the Bankruptcy Code. Section 503 of the Bankruptcy Code and cases interpreting it require that requests for payment of administrative expenses are brought in the main bankruptcy case because all creditors are entitled to notice of the request for payment from the estate. Contrary to the Debtor's assertion, Bankruptcy Rule 3007 does not apply to requests for payment of administrative expenses. Accordingly, the Motion is properly before the Court in the main bankruptcy case.

4. With respect to the second issue, the Franchise Agreements clearly assign to the Debtor the responsibility for the expenses requested in the Motion. Specifically, § 4 of the Leases and other provisions of the Franchise Agreements explain in detail the Debtor's maintenance responsibilities. Along with the incorporated Maintenance Schedule (defined below), § 4 provides a categorized, line-by-line allocation of maintenance, repair, and replacement responsibilities

between CAP and the Debtor. All the expenses asserted in the Motion relate to items that the Maintenance Schedule allocates to the Debtor. Because the Debtor did not perform the maintenance, repairs, and replacements required under the Franchise Agreements, the Debtor is required to pay CAP for the expenses CAP incurred performing the Debtor's duties.[3]

5. In the Objection, the Debtor correctly points out that CAP inadvertently included in the Motion the expenses incurred in repairing the station known as "IL0084." This station was leased to an affiliate of the Debtor and surrendered to CAP in the same series of transactions in which the Debtor surrendered the Pushback Stations. Accordingly, CAP withdraws its request for the reimbursement of $102,797.00 of expenses related to IL0084, and requests that the Court allow CAP's administrative expense claim in the amount of $594,096.88 (instead of $696,893.88) payable from the Security Deposit. Because the Debtor's objection raises no issues of fact regarding CAP's modified and fully supported request for allowance and payment of administrative expenses in the reduced amount of $594,096.88, the Court should grant the request on the pleadings and authorize CAP to deduct that amount from the Security Deposit.

## REPLY

**I. The Motion was Properly Brought in the Main Case because the Bankruptcy Code and Bankruptcy Rules Do Not Authorize Requests for Payment of Administrative Expenses to Be Brought in Adversary Proceedings.**

6. The Debtor argues that CAP should have brought the Motion in the Adversary Proceeding because filing it in the main bankruptcy case creates duplicative litigation and violates the rule against claim splitting. Objection, ¶¶ 4-5. The Motion does not create duplicative

---

[3] As explained herein and in the Motion, payment of CAP's requested expenses is required under the Fuel Supply Agreements (attached as **Exhibit A**), the Leases (attached as **Exhibit B**), and the Security and Cross Default Agreement (attached as **Exhibit C**). The Maintenance Schedule is included in the Leases, but is also attached separately for convenience as **Exhibit D**.

3

litigation or amount to claim splitting.[4]  However, whether the Motion is duplicative of issues in the Adversary Proceeding is irrelevant because requests for payment of administrative expenses must be filed in the main bankruptcy case.

7.     The Bankruptcy Code distinguishes proofs of claim from requests for payment of administrative expenses.  *See* 11 U.S.C. §§ 501-503.  Sections 501 and 502 address filing and objecting to a proof of claim, while § 503 addresses requests for payment of administrative expenses.  *See In re Phoenix Rest. Grp., Inc.*, No. 301-12036, 2004 WL 3113719, at *20 (Bankr. M.D. Tenn. Dec. 16, 2004), *aff'd*, 373 B.R. 541 (M.D. Tenn. 2007) ("Section 503 concerns administrative expenses, which are distinct from claims filed under § 501").

8.     Section 503 of the Bankruptcy Code provides, in part, "(a) [a]n entity may timely file a request for payment of an administrative expense[.] … (b) After notice and a hearing, there shall be allowed administrative expenses[.]"  11 U.C.S. § 503(a)-(b).  Section 503 and the cases interpreting it require requests for payment of administrative expenses to be brought in the main bankruptcy case, not in adversary proceedings.  As explained by the Eighth Circuit in *In re Anderberg-Lund Printing Co.*, "a 503(b) claim is not properly brought in an adversary proceeding. . . . Such claims are appropriately brought by motion in the bankruptcy case, and relief is typically granted in contested claims only upon notice and hearing."  109 F.3d 1343, 1346 (8th Cir. 1997); *see also In re Colandrea*, 17 B.R. 568, 583 (Bankr. D. Md. 1982) (holding that the assertion of

---

[4]  Claim splitting occurs when a party brings causes of action in multiple proceedings that arose under the same transaction. *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-CV-5577, 2017 WL 1163741, at *4 (N.D. Ill. Mar. 29, 2017).  CAP's counterclaim in the Adversary Proceeding relates to unauthorized point-of-sale equipment.  It is completely unrelated to the Security Deposit and seeks only injunctive relief.  The Debtor's claims in the Adversary Proceeding address (1) whether the reduction of leased stations entitles the Debtor to a reduced security requirement, (2) whether CAP has violated the automatic stay, and (3) whether CAP has tortiously interfered with the Debtor's contracts.  Such claims are wholly independent from whether the Debtor was responsible for repairs and replacements at the Pushback Stations and whether the Debtor must reimburse CAP for its expenses incurred in performing the Debtor's obligations.  Therefore, the Motion does not constitute claim splitting and will not result in duplicative litigation because the factual bases for the Motion are unrelated to the factual bases for any claims asserted in the Adversary Proceeding.

4

an administrative expense claim in an adversary proceeding is improper because administrative expense claims may only be allowed if all creditors and interested parties have had an opportunity to object).

9. In further support of its argument, the Debtor states that Bankruptcy Rules 3007(b) and 7001 require CAP to bring the Motion in the Adversary Proceeding because the Debtor seeks injunctive relief related to the Security Deposit. Objection, ¶¶ 6-7. This issue is irrelevant because Bankruptcy Rule 3007 sets forth the procedure for objecting to a proof of claim but does not apply to requests for payment of administrative expenses.[5]

10. Bankruptcy Rules 3001-3008 establish procedures for proofs of claim filed under § 501 of the Bankruptcy Code. As explained above, requests for payment under § 503 follow a different process. Therefore, Bankruptcy Rules 3001-3008 do not apply to requests for payment filed under § 503 of the Bankruptcy Code. *See In re Phoenix Rest. Grp., Inc.*, 2004 WL 3113719, at *20 ("Procedure for the management of a request for administrative expense under the Federal Rules of Bankruptcy Procedure is separate and different than the management of proofs of claim."); *Matter of Mansfield Tire & Rubber Co., Inc.*, 73 B.R. 735, 738 (Bankr. N.D. Ohio 1987) ("The Bankruptcy Rules outline in detail the form, content and execution of a proof of claim[.] . . . While the legislative history of Section 503 of the Bankruptcy Code states that the Bankruptcy Rules will also specify the time, form and method of filing requests for payment of administrative expenses, no such rule has as yet been promulgated."); *In re Atcall, Inc.*, 284 B.R. 791, 797 (Bankr. E.D. Va. 2002) ("The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure

---

[5] Even if Bankruptcy Rules 3001-3008 were applicable to § 503 administrative expense requests, Bankruptcy Rules 3007(b) and 7001 would not apply here because neither the Motion nor the Objection seeks injunctive relief. The Motion seeks only payment of administrative expenses. The Objection seeks only denial of the Motion. Neither requests an injunction or any other type of equitable relief.

5

set out with great particularity the procedures for filing proofs of claims and the manner in which they are allowed. The same detail is missing for payment of administrative expenses.").

11. Accordingly, the relevant statutes, rules and case law are clear that Bankruptcy Rule 3007 does not apply to the Motion. In sum, the Motion was properly filed in the main bankruptcy case and there is no basis to conclude otherwise.

II. **The Debtor Is Liable for Expenses CAP Incurred in Repairing and Upgrading the Stations.**

12. The Debtor was responsible for performing the repairs, maintenance, and replacements that CAP performed after the Debtor surrendered the Pushback Stations. Leases, §§ 4.1, 4.3; Fuel Supply Agreements, § 5.5. Under the Franchise Agreements, if CAP incurs expenses performing repairs that were the Debtor's responsibility, the Debtor must reimburse CAP, and CAP may take such expenses from the Security Deposit. Leases, §§ 6.2, 9.1(d), 12.2; Security and Cross Default Agreement, § I.C. CAP's right to be reimbursed from the Security Deposit survived the surrender of the Pushback Stations. Mutual Termination Agreements, ¶ 2; Fuel Supply Agreements, § 10.2. Therefore, the Franchise Agreements authorize CAP to deduct its expenses from the Security Deposit.

   a. **The Franchise Agreements Required the Debtor to Perform the Repairs and Replacements at the Pushback Stations.**

13. The Debtor argues that "CAP is now wrongfully attempting to shift the economic burden of those long neglected repairs onto the Debtor without any basis in fact or law." Objection, ¶ 12. However, the Debtor seeks to shift such burden onto CAP by glossing over provisions of the Franchise Agreements that clearly impose additional obligations on the Debtor. The Debtor acknowledges its responsibilities under § 3.5 of the Leases to return the Pushback Stations in the same condition in which it received them. Objection, ¶ 9. However, the Debtor ignores its responsibilities under §§ 4.1 and 4.3 of the Leases and § 5.5 of the Fuel Supply Agreements.

14. Section 4.1 of the Leases allocates maintenance, repair, and replacement responsibilities between the parties. Section 4.1 provides, in part, "Tenant shall regularly maintain and promptly repair and replace, at Tenant's sole expense, all Equipment, fixtures, buildings, and improvements located at the Property, except as otherwise provided on the schedule entitled 'Maintenance Schedule' attached hereto as Exhibit 4.1" (the "<u>Maintenance Schedule</u>," attached to this Reply as **Exhibit D**."

15. Section 4.3 of the Leases provides, in part:

   Tenant shall

   (a) At Tenant's expense and except as expressly provided under Section 4.2, maintain the Property and all equipment and property located on the Property in good, safe, and operating condition and promptly make all necessary repairs or replace with equipment or property of comparable value;

   . . .

   (f) Repair or replace any Equipment, fixtures, buildings, or improvements, including Equipment, fixtures, buildings, or improvements on the Maintenance Schedule, if the need for the repair or replacement is due to causes other than ordinary wear and tear or damage by the elements.

Leases, § 4.3.

16. Section 5.5 of the Fuel Supply Agreements provides,

   "Franchise Dealer shall, at Franchise Dealer's expense, maintain the Marketing Premises and all adjacent areas in good repair and safe condition including making all repairs, replacements, alterations, additions, periodic cleaning, landscaping, repainting, replacing obsolete signs, equipment and fixtures and complying with the Guidelines and such other methods, procedures, standards and specifications as Branded Supplier or Distributor may prescribe from time to time in writing."

Fuel Supply Agreements, § 5.5.

17. The Maintenance Schedule clearly identifies the parties' repair and replacement responsibilities. The Debtor neglected these responsibilities and now pretends that the Maintenance Schedule does not exist. The Debtor specifically states that it has no obligation for HVAC repairs and replacements. Objection, ¶ 11. However, the Maintenance Schedule assigns all "Air Conditioning" and "Heat" responsibilities to the Debtor. Maintenance Schedule at 1. The Debtor also complains of expenses for necessary fuel dispenser "upgrades." Objection, ¶ 11. However, apart from "Brand upgrade," the Maintenance Schedule assigns all fuel dispenser responsibilities to the Debtor, including "EMV compliance" and "card readers." Maintenance Schedule at 3. Lastly, the Debtor complains of expenses paid to Galaxy Group, LLC, primarily for repairs and replacements of lights throughout the stations, inspection of HVAC systems, inspection and replacement of water heaters, and repair of ceiling tiles. *See* Objection, ¶ 11; Motion, Ex. B at 2-13, 15, 42-44, 46, 52. Responsibility for all these repairs is allocated to the Debtor on the Maintenance Schedule. Therefore, the Debtor's assertion that it "has absolutely no obligation to pay" for the repairs and replacements at the Pushback Stations is inconsistent with the express terms of the Maintenance Schedule.

18. The Objection does not even mention §§ 4.1 and 4.3 of the Leases or § 5.5 of the Fuel Supply Agreements. The Debtor does not attempt to provide any justification for its failure to comply with these provisions. Instead, the Debtor pretends that these terms of the Franchise Agreements do not exist and that its only obligation with respect to the Pushback Stations was to surrender them in "broom-clean" condition. Because the Debtor surrendered the Pushback Stations without having fulfilled its repair, maintenance, and replacement obligations, CAP incurred substantial costs that are recoverable from the Debtor and the Security Deposit.

### b. The Debtor's Failure to Maintain the Stations Results in a Debt to CAP that is Payable from the Security Deposit.

19. Section 6.2 of the Leases provides, in part:

"Tenant assumes the risk of and sole responsibility for and agrees to … indemnify … Landlord and its Affiliates … from and against all Losses and any and all of the following (all of which shall also be included in the definition of the term 'Losses'): expenses, costs (including, without limitation, legal fees and costs and other professional fees), penalties, fines (without regard to the amount of such fines), liabilities, claims, demands and causes of action, at law or in equity . . . resulting from, related to, or arising out of the actual or alleged:

. . .

(d) Violation or breach of any warranty, representation, or obligation of Tenant or any Related Party under this Lease or any Related Agreement;

. . .

(h) Damage to the Property;

(i) *Failure by Tenant to comply with Tenant's maintenance obligations under this Lease*[;] [and]

. . .

(n) Failure by Tenant or any Related Party to fully comply with any provision, covenant, standard, or requirement of this Lease and/or any Related Agreement[.]

Leases, § 6.2 (emphasis added).

20. The costs that CAP incurred repairing the Pushback Stations were the result of the Debtor's failure to perform its repair and replacement responsibilities. Therefore, the Franchise Agreements require the Debtor to reimburse CAP for these expenses. As explained in the Motion, CAP has the contractual right to reimburse itself from the Security Deposit for any amounts owed to CAP by the Debtor. Therefore, CAP is entitled to apply the Security Deposit to its allowed administrative expenses as contractual damages.

9

## CONCLUSION

21.     The Debtor assumed the Franchise Agreements and claims arising therefrom are entitled to administrative expense status.  Neither the Debtor nor any other party in interest has objected to the validity or reasonableness of the expenses requested in the Motion.  The Debtor's procedural objections are unfounded.  The Motion was properly filed in the main case pursuant to § 503 of the Bankruptcy Code, and the existence of unrelated, factually distinct claims in the Adversary Proceeding does not change that conclusion.  As to the merits, the Debtor cannot enjoy the benefits of the Franchise Agreements while avoiding the associated obligations, including the Debtor's responsibility for equipment repairs and replacements at the Pushback Stations.  Therefore, CAP requests that the Court overrule the Objection and grant the Motion subject to a reduction of $102,797.00 for costs incurred at IL0084, for a total allowed administrative expense claim in the amount of $594,096.88, payable from the Security Deposit.

|  |  |
|---|---|
|  | Respectfully submitted,<br>CrossAmerica Partners, LP |
| Dated: October 2, 2024 | By: */s/ Gordon E. Gouveia*<br>   One of its attorneys |

Gordon E. Gouveia (#6282986)
Peter C. Buckley (admitted *pro hac vice*)
Matthew R. Higgins (#6336039)
FOX ROTHSCHILD LLP
321 North Clark Street, Suite 1600
Chicago, IL 60654
Tel: (312) 517-9200
ggouveia@foxrothschild.com

# CERTIFICATE OF SERVICE

       I, Gordon E. Gouveia, certify that I caused a copy of the foregoing to be served on all persons set forth on the attached Service List identified as Registrants through the Court's Electronic Notice for Registrants and, as to all other persons on the attached Service List, by mailing a copy of same in an envelope properly addressed and with postage fully prepaid and by depositing same in the U.S. Mail, on October 2, 2024.

                                              By: */s/  Gordon E. Gouveia*

# SERVICE LIST

**Registrants Served Through the Court's Electronic Notice for Registrants**

Patrick Layng, United States Trustee
219 South Dearborn Street, Suite 873
Chicago, Illinois 60604

Gregory K. Stern
Gregory K. Stern, P.C.
53 West Jackson Blvd.
Suite 1442
Chicago, IL 60604

John J. Morgan
Barr & Morgan
2777 Summer St.
5th Floor
Stamford, CT 06905

William J. Serritella
Yeoeun C. Yoon
111 East Wacker Drive, #2600
Chicago, Illinois 60601

Daniel Scheeringa
4711 Golf Road, #200
Skokie, Illinois 60076

William K. Kane
321 North Clark Street
32nd Floor
Chicago, Illinois 60654

Ariel Weissberg, Counsel for:
Ameer Investment, Inc.;

Areej Investment, Inc.;
Kareem, Inc.;
Kenan Ventures, Inc.;
Leanne Investments, Inc.;
Leanne Ventures, Inc.; and
Marks Supermarket NC, Inc.
Weissberg and Associates, Ltd.
125 South Wacker Drive
Suite 300
Chicago, IL 60606

John Reding, Counsel for Illinois Lottery
Illinois Attorney General's Office
100 W. Randolph St., 13th Floor
Chicago, IL 60601

Miriam Stein Granek, Counsel for Itria Ventures, LLC
Gutnicki LLP
4711 Golf Road
Suite 200
Skokie, IL 60076

Kimberly Ross Clayson, Counsel for The Huntington National Bank
Taft Stettinius & Hollister LLP
27777 Franklin Rd. Suite 2500
Southfield, MI 48034

**Parties Served Via United States Mail**

IYS Ventures, LLC
15416 South 70th Court
Orland Park, Illinois 60462

Aramark Uniform Services
2334 South Michigan Avenue
Chicago, IL 60616

BMW Bank of North America, c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

BMW Financial Services
Customer Service Center
PO Box 3608
Dublin, OH 43016-0306
2

163175569.5

Byzfunder NY, LLC
530 7th Avenue
Suite 505
New York, New York 10018

Coca-Cola Bottling Company
PO Box 105637
Atlanta, GA 30348

Fox Capital Group, Inc.
803 South 21st Avenue
Hollywood, FL 33020

Frito-Lay, Inc.
7700 Bulldog Drive
Summit Argo, IL 60501

Home State Security
250 East 5th Street
15 Floor
Cincinnati, OH 45202

M&M Service
315 East 15th Street
Covington, Kentucky 41011

Manistique Oil Company
216 Deer Street
Manistique, MI 49854

Marks Supermarket NC, Inc.
317 U.S. Highway 64 West
Creswell, North Carolina 27928

Mercedes Benz Financial Services
PO Box 5209
Carol Stream, IL 60197-5209

Nissan Motor Acceptance Corporation
Bankruptcy Department
P.O. Box 660577
Dallas, Texas 75266-0577

Pepsi Beverages Co.
2541 West 20th Avenue
Oshkosh, WI 54904

3

163175569.5

Byzfunder NY, LLC
530 7th Avenue
Suite 505
New York, New York 10018

Coca-Cola Bottling Company
PO Box 105637
Atlanta, GA 30348

Fox Capital Group, Inc.
803 South 21st Avenue
Hollywood, FL 33020

Frito-Lay, Inc.
7700 Bulldog Drive
Summit Argo, IL 60501

Home State Security
250 East 5th Street
15 Floor
Cincinnati, OH 45202

M&M Service
315 East 15th Street
Covington, Kentucky 41011

Manistique Oil Company
216 Deer Street
Manistique, MI 49854

Marks Supermarket NC, Inc.
317 U.S. Highway 64 West
Creswell, North Carolina 27928

Mercedes Benz Financial Services
PO Box 5209
Carol Stream, IL 60197-5209

Nissan Motor Acceptance Corporation
Bankruptcy Department
P.O. Box 660577
Dallas, Texas 75266-0577

Pepsi Beverages Co.
2541 West 20th Avenue
Oshkosh, WI 54904

Red Bull Distribution Company
PO Box 204750
Dallas, TX 75320

Samson Funding
17 State Street
Suite 630
New York, New York 10004

U.S. Small Business Administration
409 3rd Street SW
Washington, DC 20416

We Energies
PO Box 2046
Milwaukee, WI 53201-2046

Wisconsin Department of Revenue
2135 Rimrock Road
Madison, WI 53713

Xcel Energy
PO Box 9477
Minneapolis, MN 55484-9477