IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| IYS Ventures, LLC, | ) | Case No. 23-06782 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |

# Exhibit C:

# IYS Ventures LLC Creditors Trust

# IYS VENTURES, LLC CREDITORS TRUST AGREEMENT

This Agreement, made on this ___ day of _____ 2025 and which shall become effective upon the entry of an Order of the Court, as defined below, is between IYS Ventures, LLC, a Limited Liability Company organized under the laws of the State of Illinois, (the "Debtor" or "IYS") and Matthew Brash of Newpoint Advisors Corporation, as Trustee (the "Trustee"). The Debtor hereby conveys, transfers and assigns to the Trustee all of the property as described herein and in the Debtor's Plan of Reorganization, as may be amended from time to time, and Order Confirming Plan Of Reorganization. The Trustee shall hold and dispose of that property, and any other property added to the trust (collectively, the "Trust Assets") as follows:

## ARTICLE I
## RECITALS

The Debtor is the Debtor in Possession in that certain Chapter 11 proceeding pending before the Honorable David D. Cleary (the "Bankruptcy Judge") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"), and known as Case No. 23-06782 (the "Chapter 11 Case"). The Disclosure Statement To Debtor's Plan of Reorganization, Filed By IYS Ventures, LLC (the "Disclosure Statement") and the Plan of Reorganization Filed By IYS Ventures, LLC (the "Plan of Reorganization") were filed on January 12, 2024. The Disclosure Statement and Plan of Reorganization, may be amended from time to time to provide for, *inter alia*, the Creditors Trust set forth herein that is being established pursuant to the laws of the State of Illinois to facilitate the administration and operations of the assets of the Reorganized Debtor pursuant to an Order Confirming the Debtor's Plan of Reorganization to be entered by the Bankruptcy Court, and distributions pursuant thereto.

Pursuant to the terms of the Order Confirming the Plan of Reorganization, the Trustee will be appointed to, *inter alia*, act as the Plan Trustee to administer the Plan and distribute the Debtor's assets and projected cash as contemplated under the Plan of Reorganization. Sufficient funds have or will be realized for the Debtor's estate to satisfy all outstanding administrative expenses and to make a distribution to its pre-petition creditors pursuant to the terms of the Plan of Reorganization. As such, the Debtor and the Trustee have executed this Agreement in order to facilitate implementation of the Plan of Reorganization.

Pursuant to the provisions of the Plan and as otherwise authorized by the Court, some of the assets of the Debtor's estate have already been or will be liquidated and reduced to cash. It is contemplated that under the Plan of Reorganization and this Creditors Trust Agreement the Trustee will be authorized to continue to operate the business of the Debtor and liquidate the remaining assets of the Debtor's estate to the extent possible and practical. All assets of the Debtor (the "Reorganization Assets") will be transferred to the Trustee hereunder, as follows:

(i)   the net cash proceeds of the prior sale of assets of the Debtor's estate;

(ii)  causes of action including preference and other avoidance actions;

(iii) accounts receivables;

(iv)  litigation claims including adversary proceedings filed or to be filed against CrossAmerica Partners, LP and any and all other causes of action and litigation claims

known and unknown;

(v) any additional proceeds or refunds due to the Debtor including the refund of its security deposit held by CrossAmerica Partners, LP and its affiliates;

(vi) the new equity of the Reorganized Debtor created by the terms of the Plan of Reorganization; and,

(vii) any other assets that may come into the estate, including the remaining Leased Stations, all of which will collectively and cumulatively constitute the assets of the Trust and are referred to herein as the "Trust Assets".

## ARTICLE II
## DATE TRUST TO BECOME EFFECTIVE

This Creditors Trust shall become effective, and any property assigned to the Creditors Trust will be deemed to have been received by it on, but not before, the Effective Date of the Plan of Reorganization and its execution by the Debtor and the Trustee.

## ARTICLE III
## DEFINITIONS

The terms used in this Agreement shall have the same meanings attributed to them in the Plan of Reorganization unless a different meaning is assigned in this Agreement to such terms.

## ARTICLE IV
## TRUST PURPOSE

This Creditors Trust is established and shall be maintained for the purpose of distributing the Debtor's assets, including but not limited to cash from operations of its stations leased from CrossAmerica Partners, LP, and the terms of the Debtor's confirmed Plan of Reorganization. The purposes of this Creditors Trust shall include, but not be limited to, the following specific activities:

1. Collecting the Reorganization Assets including the equity and membership interests of the Reorganized Debtor;

2. Assisting in the operation of the Reorganized Debtor's business and liquidating any Reorganization Assets deposited by the Debtor with the Trustee for the purpose of facilitating distribution of funds to the holders of Allowed Claims;

3. Making distributions from time to time to the holders of Allowed Claims in

accordance with the terms of the Plan of Reorganization and this Agreement;

4. Selling the New Equity of the Reorganized Debtor in conjunction with the terms and provisions of the Plan of Reorganization and this Agreement upon completion of the payment to creditors of the dividends provided in the Plan and utilizing the proceeds of such sale as additional assets to be distributed in accordance with the terms of the Plan of Reorganization and this Agreement.

5. Commencing such litigation as may be deemed necessary to compel CrossAmerica Partners LP and its affiliates to refund the security deposit of the Debtor and recover damages for, *inter alia*, breach of contract and such other causes of action that may be litigated including but not limited to the PMPA Adversary filed by the Debtor against the CAP Entities seeking relief and damages for, *inter alia*, violations of the Petroleum Protection Practices Act ("PMPA") and breach of contract and assigned adversary case number 23 – 00352, and the CAP Adversary filed by the Debtor against the CAP Entities, CAPL Retail, LLC, Robert Brecker, Amy Shupp and Steven Lattig seeking relief and damages for, *inter alia*, Count I Violations of the Automatic Stay Provisions of 11 U.S.C. §362, Count II Breach of Contract, Count III Tortious Interference with Business and Business Relationships, and Count IV Injunctive and Other Relief and assigned adversary case number 24 –00   .

6. Providing funds for payment of Trust Expenses, including, but not limited to taxes imposed on this trust, if any, and Trustee fees and expenses and accounting and legal fees and expenses;

7. Filing any necessary tax returns for the Creditors Trust and paying any taxes due and owing;

8. Filing until the entry of a Final Decree in the Bankruptcy Case all reports, including Monthly Operating Reports with the United States Trustee paying all required quarterly services charges to the United States Trustee; and,

8. Taking all other actions deemed in the exercise of the Trustee's business judgment to be required or beneficial to the administration of the Creditors Trust.

## ARTICLE V
## COLLECTION AND REORGANIZATION OF TRUST ASSETS

1. **Collection.** After the date this trust becomes effective, the Trustee shall use reasonable efforts to administer the Creditors Trust and accomplish the Trust Purpose as provided in Article IV hereof.

2. **Reorganization.** All Reorganization Assets received and administered by the Trustee shall be converted to cash in the exercise of his business judgment, taking into account

such reasonable delays due to market conditions and other factors that may affect the value to be realized. The net proceeds of the Trust Assets, and any income generated in connection therewith, shall be held and deposited by the Trustee into business accounts (the "Plan Accounts") and in the event that the Reorganization Assets exceeds the sum of $250,000.00, then deposit such sums into investments(s) that are insured or guaranteed by a department, agency, or instrumentality of the United States (collectively, the "Plan Investments") and as set forth herein.

3. **Authorization to Borrow Money and Collateralize Assets.** Trustee is authorize and empowered to borrow funds for the purpose of monetizing the Trust Assets into cash available to pay expenses and use to make distributions to creditors as required by the terms of the confirmed Plan of Reorganization. The Trustee in his fiduciary capacity and not individually may execute all necessary loan documents, promissory notes, security agreements, UCC Financing Statements and related documents to achieve the borrowing and provide for its repayment. Court authorization shall not be required for the Trustee to borrow such funds and the provisions of the Creditors Trust Agreement shall be sufficient authorization for the Trustee's actions.

## ARTICLE VI
## DISTRIBUTIONS FROM TRUST

1. **Separate Accounting For Principal and Income.** Principal and income shall be accounted for separately during the entire term of the Creditors Trust. Any income earned from funds deposited in the Plan Account or the Plan Investments shall be credited to the account and held and distributed with the proceeds of the account as hereinafter provided. No creditor or claimant shall be allowed to enforce any claim of right against this Trust and shall solely be entitled to receive a distribution from the corpus of the Trust as provided in the Plan of Reorganization and this agreement as determined by the Trustee. No creditor shall be entitled to accrue interest on its Claim except as provided by the terms of the Plan of Reorganization..

2. **Periodic Distributions.** The Trustee shall distribute to the holders of Allowed Claims the income and proceeds (net of Trust Expenses) from the Trust assets in accordance with the provisions of the Plan of Reorganization including the timing of such distributions, except that the Trustee in his discretion may retain an amount of net proceeds or net income reasonably necessary to maintain the value of its assets or to be able to satisfy administrative expenses, claims and contingent liabilities including priority payments and Disputed Claim(s).

3. **Priority of Distributions.** All distributions under this Creditors Trust shall be made in accordance and consistent with the priorities and distribution scheme and terms of the confirmed Plan of Reorganization.

4. **Claims Objections.** The Trustee shall have the right to substitute for the Debtor in order to prosecute claim objections and any pending claim objection filed by the Debtor.

5. **Unclaimed Distributions.** Any unclaimed payment made to any Creditor, including, without limitation, unnegotiated checks or drafts, shall revert to the Creditors Trust on a day being one hundred eighty (180) days after the issuance of such distribution, and shall thereafter be held and distributed as if the amount due the Creditor that is unclaimed constituted a Claim that was disallowed.

## ARTICLE VII
## TERMINATION OF TRUST

This Creditors Trust shall terminate December 31, 2029, (the "**Termination Date**") or sooner if the Trustee has completed all of his duties hereunder, including the distribution of all of the proceeds of, and other amounts called for hereunder and under the Reorganization Plan. Upon a finding by any court of competent jurisdiction that an extension of the Termination Date of the trust is necessary to the fulfill the purpose of the trust, and upon court approval, the Termination Date may be extended to a date certain, taking into account the particular facts and circumstances warranting such extension, but any extension must be approved by the court prior to six (6) months of the Termination Date. Upon the Termination Date (including extensions, if any), the Trustee shall distribute any remaining property to the holders of Allowed Claims, or the Debtor as is appropriate in accordance with Article VI of this Agreement.

## ARTICLE VIII
## TRUSTEE OBLIGATIONS AND POWERS

1. **Powers and Obligations of Trustee.** The Trustee shall ensure that the payments from the Creditors Trust are strictly made in accordance with the terms of the confirmed Plan of Reorganization as to the timing of such distributions and the order of payment in order to accomplish the implementation of this Agreement and the terms and conditions of the Plan of Reorganization. In the event of any conflict between the terms of this Agreement and the Plan of Reorganization, the terms of the Plan of Reorganization shall prevail. This Agreement shall be construed to confer upon the Trustee the authority to carry on the Debtor's business activity for profit. Other than the responsibilities of the Trustee expressly set forth herein, the Trustee shall have no obligations in connection with this Agreement or the Plan of Reorganization, and no implied duties or obligations shall be read into this Agreement against the Trustee. The Trustee shall make continuing efforts to dispose of the Reorganization Assets, make timely distributions, and shall not unduly prolong the duration of this Liquidating Trust.

2. **Agents and Professionals.** The Trustee is authorized without an order of the Bankruptcy Court to retain and compensate such necessary agents, accountants, actuaries, appraisers, attorneys and such other advisors as may be necessary to evaluate any property and pursue any claim with respect to it including such professional persons that have previously represented the Debtor. As provided in the Plan, the Trustee in his discretion and without approval of the Bankruptcy Court may compromise, contest, prosecute or abandon claims in favor of or against the Debtor, including any Avoidance Action, Litigation Claim and objection to the allowance of any secured, priority or non-priority claim. The Trustee shall inform creditors

and claimants in connection with annual reports of the identity of all agents and professionals employed to perform services under this Trust Agreement and the amounts of compensation paid to each agent and professional.

3. **Assignment and Abandonment.** If at any time the Trustee reasonably believes that the continuation of the Creditors Trust has become economically impractical, and that the best interests of the Claimants will be served by such action, the Trustee may abandon without the approval of the Bankruptcy Court any asset(s) the value of which is severely impaired as to render the property worthless.

4. **Investment.** In the administration of this Creditors Trust, the Trustee may invest and reinvest the principal and income in only the following types of property.

   A. Direct obligations of the Unites States of America;

   B. Obligations guaranteed by the United States of America; and,

   C. Obligations of any agency or corporation that is, or after the date of this Agreement may be, created by or pursuant to an act of the Congress of the United States as an agency or unit instrumentality thereof.

   The Trustee shall have the duty to protect and conserve the Trust Assets, and the Trustee shall have the power to make, execute, acknowledge and deliver any contracts or agreements the Trustee deems necessary to effectuate the purpose of this Agreement.

5. **Trustee Compensation.** The amount of the Trustee's compensation shall be in accordance with the statutory scheme of §326 of the Bankruptcy Code and further hourly compensation as provided in the Plan, except at all times the Trustee's fees shall be commercially reasonable. The Trustee's compensation will be paid consistent with and shall be considered a Trust Expense entitled to administrative priority as provided in the Plan of Reorganization.

6. **Trust Expenses.** The Trustee shall be entitled to retain counsel for the purpose of representing the Trustee in the enforcement and fulfillment of the terms of this Agreement. In order to achieve certain efficiencies and to reduce costs and expenses, the Trustee is expressly given the power to retain as his counsel the former counsel of the Debtor, who is familiar with the assets and interests assigned to this Trust. The Trustee shall send copies of all bills for costs and services of attorneys, accountants, actuaries and other advisors, before payment, to the Debtor provided, however, that no provision of this Agreement shall be construed as imposing on the recipients of such bills any obligation to review them or to object to their payment. If within fourteen (14) days after mailing of a bill any party objects to its payment, then except to the extent the Trustee and the objecting party agree otherwise, within an additional fourteen (14) days the Trustee shall submit the request for costs and services to any court of competent

jurisdiction including the Bankruptcy Court for entry of an order directing payment. In the event no objection is received by the Trustee within fourteen (14) days after mailing the bill, the bill shall be deemed approved, and the Trustee may make payment on it. Any objection shall be in writing and shall be considered received when actually received by the Trustee, including by personal delivery and facsimile mail. The reasonable fees and actual and necessary expenses of counsel to the Trustee and counsel for the Debtor, in the performance of their duties after the date of this Agreement shall be considered Trust Expenses entitled to administrative priority payment as provided in the Plan of Reorganization.

7. **Trust Taxes.** The Trustee shall have the power to pay any and all federal, state and local taxes. All taxes shall be considered Trust Expenses entitled to priority payment as provided in Article VI. The Trustee shall prepare and file any tax returns for the Trust, and any other tax-related documents required under federal, state and local laws.

8. **Bond, Liability and Indemnification.** The Trustee shall post a bond in an amount sufficient to assure the performance of his duties, but in no case less than one and one-half times the cash or cash proceeds that comes into his possession at any particular time. The expense incurred for such bond shall be considered a Trust Expense entitled to priority payment pursuant to Article VI.3A of this Agreement. The Trustee shall not be required to expend or risk his own funds or otherwise incur any financial liability unless he first shall have been indemnified to his satisfaction against the cost, expense or liability that may be incurred thereby; nor shall the Trustee be held responsible for any loss sustained to the trust funds (including any environmental liability or obligation of any kind or nature whatsoever with respect to the Trust Assets) unless it is proved that the Trustee's actions or omissions constituted gross negligence or willful misconduct in the exercise or failure to exercise any right, power or duty vested in him under this Agreement. The Trustee shall have no responsibility for the genuineness or validity of any document or other item deposited with him, and he shall be fully protected in acting in accordance with any written instructions given to him hereunder and believed by the Trustee to be properly given. The Trustee shall be held harmless and indemnified by the assets of the Creditors Trust against any personal liability that may be asserted against him in the administration of the Creditors Trust.

9. **Removal.** The Trustee may be removed and replaced with or without cause by written notice signed by holders of not less than sixty-six percent (66%) of the holders of Allowed Claims, and delivered to the Trustee. Any Trustee may resign upon fourteen (14) days' notice delivered to the Debtor and attorney for the Debtor. The removal or resignation of the Trustee shall not become effective until the successor Trustee has accepted its office. A successor Trustee shall be William Zeigler, CPA or such other person appointed by a written instrument signed by the Debtor; provided, however, a person related by blood or marriage to Muwafak Rizek shall not be eligible to be appointed as the successor trustee. If a successor Trustee shall not have accepted its appointment within fourteen (14) days of a removal or resignation of the current Trustee, the Trustee may apply to any court of competent jurisdiction including the Bankruptcy Court to appointment a successor Trustee. The costs, fees and

expenses related to such application to any court shall be considered Trust Expenses entitled to priority payment and as provided herein.

## ARTICLE IX
## TAX MATTERS

**1. Tax Treatment of Trust.** This Liquidating Trust shall for all purposes be treated as a grantor trust and shall file such returns as are required. To the extent that the operation or Creditors Trust creates tax liability of the Trust or the Debtor, the Trustee shall promptly pay such tax liability, and any such payments shall be considered Trust Taxes.

**2. Tax Treatment of Transfer to Trust.** It is not contemplated that the transfer of assets by the Debtor to this Trust will constitute a taxable transaction, if the Debtor is treated as the owner of the Trust for federal income tax purposes. To the extent that the Internal Revenue Service successfully asserts that the transfer is a taxable event, any taxes imposed upon the Debtor or the Trust shall be paid from the Reorganization Assets as Trust Expenses.

**3. Consistent Valuation.** Any property transferred to the Trust shall be valued by the Trustee and the holders of Allowed Claims on a consistent basis and such valuations shall be used for all income tax purposes.

## ARTICLE X
## SEVERABILITY

If any section of this agreement or portion thereof shall be adjudged illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not affect the legality, validity, or enforceability of this Agreement, as a whole, or of any other section or portion thereof not so adjudged.

## ARTICLE XI
## MODIFICATION

This Agreement may be amended, altered, or modified upon approval of any court of competent jurisdiction.

## ARTICLE XII
## APPLICABLE LAW

This Agreement shall be governed by and interpreted under the internal laws of the State of Illinois, without regard to principles of conflicts of laws.

## ARTICLE XIII
## NOTICE

Any correspondence or notices required hereunder shall be given in writing by facsimile, telex, telegraph, by hand delivery or by certified or registered mail, return receipt requested, which shall be delivered or mailed to the parties at the addresses below:

    Trustee:    Matthew Brash
Newpoint Advisors Corporation
750 Old Hickory Boulevard, Building 2
Suite 150
Brentwood, Tennessee 37027
(847) 404-7845
mbrash@ewpointadvisors.com

    Reorganized Debtor    IYS Ventures, LLC
Attn: Muwafak Rizek
15416 South 70th Court
Orland Park, Illinois 60462
(708) 966-0514
moerizek@gmail.com

Reorganized Debtor's Attorney:

Gregory K. Stern, Esq.
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558
greg@gregstern.com

IN WITNESS WHEREOF, this Trust Agreement is signed on the date first above written.

_____
Trustee, Matthew Brash
Newpoint Advisors Corporation

_____
Debtor, IYS Ventures, LLC.
By Its Manager: Muwafak Rizek