IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| IYS Ventures, LLC, | ) | Case No. 23-06782 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |

# Exhibit D

# New Credit Facility Promissory Note

# And Security Agreement

**PROMISSORY NOTE**

$800,000.00                                                                                                    February __, 2025
                                                                                                                Chicago, Illinois

For Value Received, the undersigned borrowers, IYS Ventures, LLC, the Reorganized Debtor, as defined herein and the IYS Ventures LLC Creditors Trust ( collectively the "Borrower"), jointly and severally, promise to pay to the order of Saed Awadallah or his nominees or assigns ("Payee"), 1816 E. 34th Street, Scotts Bluff, Nebraska 69361, or such other place as Payee shall specify in writing, the sum of Eight Hundred Thousand and 00/100 Dollars ($800,000.00) (the "Principal") which funds shall be used to fund the distribution to Class 5 general non-priority unsecured creditors pursuant to the Second Amended Plan of Reorganization of IYS Ventures, LLC (the "Plan of Reorganization") in the bankruptcy case captioned as, *In re: IYS Ventures LLC,* (case number 23-06782 (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"). The Principal shall be advanced to Borrower in two installments of Four Hundred Thousand Dollars ($400,000.00), each, with the first installment advanced fourteen days after the Court enters an Order confirming the Borrower's Plan of Reorganization in the Bankruptcy Case (the "First Installment") and the second installment advanced one hundred eighty days after the Court enters an Order confirming the Borrower's Plan of Reorganization in the Bankruptcy Case (the "Second Installment"). Interest shall accrue on the amount advanced of the Principal in the amount of ten percent (10%) per annum commencing on the date of advance of the First Installment ("Interest") and shall be payable (a) on the first day of the first calendar month following the date the Court enters the Order confirming IYS Ventures, LLC's Plan of Reorganization and through December 1, 2025; (b) commencing on January 1, 2026 and continuing on the first day of the next successive, consecutive months thereafter through January 1, 2034, a monthly installment of principal and in the amount of $10,500.00 each; and (c) on February 1, 2034 all unpaid Principal and all unpaid interest that has accrued on the Principal shall be payable in full. The indebtedness due under the terms of this Promissory Note shall mature in full on the February 1, 2034 (the "Maturity Date"). After the Maturity Date or if a default occurs, interest shall accrue at the rate of fifteen percent (15%) per annum ("Post-Maturity/Default Interest"). Hereinafter, the Principal, Interest, Post-Maturity/Default Interest, attorney's fees and costs shall be collectively referred to as the "Indebtedness."

The Principal and Interest may be prepaid, in whole or in part, at any time without any penalty or charge therefore.

The following shall each be events of default ("Events of Default"):
  (a) The Borrower's failure to pay interest when due;
  (b) The Borrower's failure to pay the Principal or any portion of the Indebtedness when due;
  (c) IYS Ventures, LLC failure to satisfy any of their obligations to Payee under the terms of the
      Security Agreement between IYS Ventures, LLC and Payee; and,
  (d) The unsuccessful consummation of the Conversion Option, as defined herein, on or before
      fifteen days from the date either IYS Ventures LLC or Payee exercise the option to convert
      the Indebtedness to equity pursuant to the terms of this Promissory Note.

If an Event of Default occurs, and after the Borrower's failure to cure the default within thirty (30) days of written notice of default served on Borrower: (a) the entire Indebtedness shall be automatically accelerated and immediately due and payable; and, (b) Payee shall not be precluded from any other right or remedy which Payee may have in law or equity. Notwithstanding the foregoing, Post-Maturity/Default Interest shall begin to accrue without written notice after the Maturity Date.

Any failure of the Payee to exercise any right available hereunder, or any partial or single exercise by the Payee of any right or remedy, shall not be construed as a waiver of the right to exercise the same or any other right at any other time. No default shall be waived by the Payee except in writing, and no waiver of any default shall operate as a waiver of any other default or of the same default at a future occasion.

The Borrower agrees to pay all collection costs and reasonable attorneys' fees paid or incurred in enforcing any of the Payee's rights hereunder. Any such costs, expenses, and fees shall be additional Indebtedness.

Whenever possible, each provision of this Promissory Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provisions of this Promissory Note shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition of invalidity, without invalidating the remainder of such provision or the remaining provisions of this Promissory Note.

This Promissory Note shall be governed and construed in accordance with the laws of Illinois. This Promissory Note shall be binding upon the Borrower and their successors and assigns and shall inure to the benefit of Payee and its successors and assigns.

The Borrower hereby acknowledges that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56, signed into law October 26, 2001) (the "Act"), the Payee is required to obtain, verify and record certain information and documentation that identifies the Borrower, which information includes the name and address of the Borrower and such other information that will allow the Payee to identify the Borrower in accordance with the Act. The Borrower hereby warrants that they shall (a) ensure that no person who owns a controlling interest in or otherwise controls the Borrower or any subsidiary of the Borrower is or shall be listed on the Specially Designated Nationals and Blocked Person List or other similar lists maintained by the Office of Foreign Assets Control ("OFAC"), the Department of the Treasury or included in any Executive Orders, and (b) not use or permit the use of the proceeds of the loan to violate any of the foreign asset control regulations of OFAC or any enabling statute or Executive Order relating thereto.

The Indebtedness evidenced by this Promissory Note is pursuant to business transactions among the Payee and the Borrower. The Indebtedness evidenced by this Promissory Note is not a consumer transaction. The Borrower acknowledges that the terms of this Promissory Note are fair and reasonable. The Borrower warrants that this loan is an exempted transaction under the federal Truth-in-Lending Act (15 U.S.C. Section 1601 *et seq.*) and constitutes a business loan under the provisions of section 4 of the Illinois Interest Act (815 ILCS 205/4), and that none of the proceeds thereof are intended or will be used directly or indirectly for the purpose of purchasing or carrying any "margin stock" as defined in Regulation "U" of the Board of Governors of the Federal Reserve System (12 CFR, Part 221).

The Payee may assign this Promissory Note without the consent of the Borrower.

To secure the obligations under the terms of this Promissory Note, IYS Ventures, LLC and the Reorganized Debtor, as defined herein, grant to Payee a continuing security interest in all of the tangible and intangible assets of IYS Ventures, LLC and the Reorganized Debtor, subordinate only to Itria.

<u>Waiver of Counterclaim and Jury Trial.</u> BORROWER HEREBY KNOWINGLY WAIVES THE RIGHT TO ASSERT ANY COUNTERCLAIM, OTHER THAN A COMPULSORY OR MANDATORY COUNTERCLAIM, IN ANY ACTION OR PROCEEDING BROUGHT AGAINST UNDERSIGNED BY

Page 2

PAYEE OR ITS AGENTS. BORROWER AND PAYEE, TO THE FULL EXTENT PERMITTED BY LAW, EACH HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES HEREBY THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING, INCLUDING, WITHOUT LIMITATION, ANY TORT ACTION, BROUGHT BY EITHER OF THEM AGAINST THE OTHER BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO OR IN CONNECTION WITH THIS PROMISSORY NOTE, OR ANY COURSE OR CONDUCT, ACT, OMISSION, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON (INCLUDING, WITHOUT LIMITATION, SUCH PERSON'S DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH SUCH PERSON), IN CONNECTION WITH THE INDEBTEDNESS DUE UNDER THE TERMS OF THIS PROMISSORY NOTE, INCLUDING, WITHOUT LIMITATION, IN ANY COUNTERCLAIM WHICH BORROWER MAY BE PERMITTED TO ASSERT HEREUNDER OR WHICH MAY BE ASSERTED BY PAYEE OR ITS AGENTS AGAINST BORROWER, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THIS WAIVER BY THE BORROWER OF ITS RIGHT TO A JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PAYEE TO MAKE THE LOAN.

Time of the Essence. TIME SHALL BE OF THE ESSENCE IN THE PERFORMANCE OF ALL OBLIGATIONS OF THE BORROWER HEREUNDER.

Conversion to Equity. Notwithstanding anything to the contrary contained herein, Payee and IYS Ventures LLC each have the option to convert the Indebtedness evidenced herein into equity, by which Payee will become the owner of all issued and outstanding equity securities of IYS Ventures LLC ("Equity Securities"), which shall be exercised by either on thirty days prior written notice served by next day mail on the other and their respective registered agents. Muwafak Rizek, individually and on behalf of IYS Ventures LLC, the Reorganized Debtor, and Matthew Brash as Trustee of the IYS Ventures LLC Creditors Trust are executing this Promissory Note, not individually and solely to indicate their agreement to the provisions of this subparagraph and their agreement to cooperate in the transfer of the Equity Securities to Payee upon the exercise of the Option, including the execution of such documents as are reasonable to effectuate this transfer ("Conversion Option). Upon the successful consummation of the Conversion Option, Borrower shall owe no further Indebtedness to Payee. As used herein, "Reorganized Debtor" shall mean the successor to IYS Ventures, LLC through confirmation of the Plan of Reorganization in the Bankruptcy Case.

**IYS Ventures, LLC and the Reorganized Debtor**

By:_____

Its:_____

Dated: February __, 2025

**IYS Ventures, LLC Creditors' Trust**

By:_____

Its:_____

# SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** is made and delivered as of the ___th day of February 2025, by IYS Ventures LLC and the IYS Ventures LLC Creditors Trust ("Borrower"), to and for the benefit of Saed Awadallah or his nominees or assigns ("Lender").

**RECITALS:**

    A.    Lender has or will advance the sum of $800,000.00 to Borrower and the IYS Ventures, LLC Creditors' Trust ("Advance"), pursuant to the terms of a Promissory Note of even date ("Promissory Note"). The Advance shall be collectively referred to as the "Loan."

    B.    A condition precedent to Lender's extension of the Loan to Borrower is the confirmation of a plan of reorganization in the Chapter 11 proceeding of IYS Ventures LLC, case number 23-06782 pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division and execution and delivery by Borrower of this Agreement.

**NOW, THEREFORE,** for good and valuable consideration, including the foregoing recitals, which are made a part hereof, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. **Creation of Security Interest**. Borrower hereby pledges and grants to Lender a first lien on, and security interest in all of Borrower's right, title and interest in the following property and interests in property, whether now owned by Borrower or hereafter acquired and whether now existing or hereafter coming into existence (all being collectively referred to herein as "<u>Collateral</u>"):

    A.    All of Borrower's "accounts," "instruments" (including promissory notes, drafts, bills of exchange, trade acceptances and letters of credit), equity securities (including all partnership interests, common capital stock, membership interests), "contracts" (including any agreement relating to the sale, use or management of any real property now or hereafter owned or leased by Borrower), "inventory", "general intangibles" (including, without limitation, all warranties, rights under insurance policies and indemnification rights arising out of any "contract" to which Borrower is a party), "equipment", "documents" (including all negotiable and non-negotiable bills of lading and other receipts evidencing or representing "inventory" or "equipment"), "documents of title", "goods", "fixtures", "chattel paper", "investment property", and "financial assets", as such terms are defined in the Uniform Commercial Code in effect from time to time in the State of Illinois.

    B.    All bank, savings, checking, money market and other depositary accounts of Borrower, and the balances therein, whether now or hereafter maintained with Lender or any other institution.

    C.    All other tangible and intangible property of Borrower, including, without limitation, apparatus, machinery, devices, fixtures, communication devices, systems and equipment, fittings, appurtenances, equipment, inventory, appliances, furniture, furnishings, appointments, accessories, landscaping, plants, and

    D. All proceeds, products, accessions, rents, profits, income, benefits, substitutions, additions and replacements of and to any of the property of Borrower described in the preceding clauses of this Section (including any proceeds of insurance thereon and all rights, claims and benefits against any Person relating thereto) and, to the extent related to any property described in said clauses or such proceeds, products or

accessions, all books, correspondence, credit files, records, invoices and other papers, including all tapes, cards, computer runs, computer files, databases, computer programs and other papers and documents in the possession or under the control of Borrower or any computer bureau or service company from time to time acting for Borrower.

    E.    All of the books and records pertaining to the foregoing.

2. **Secured Obligations**. The security interest created herein is given as security for the payment of all indebtedness and the performance and observance of all covenants, conditions, agreements, representations, warranties and other liabilities and obligations of Borrower or any other obligor to or benefiting Lender which are evidenced, secured or created by this Agreement, the Promissory Note or any other loan documents between Borrower and Lender, together with all amendments and modifications hereof and thereof (collectively, the "Obligations").

3. Borrower's Covenants. Borrower covenants and agrees as follows:

    (a)    The Collateral shall be kept at the Property and will be used only in the conduct of Borrower's business and operation of the buildings, structures and improvements now or at any time hereafter on the Property.

    (b)    The Collateral shall not be misused, wasted or allowed to deteriorate, except for the ordinary wear and tear resulting from its use.

    (c)    The Collateral shall at all times be insured against loss, damage, theft, and such other risks as Lender may require in such amounts, with such companies, under such policies, in such form and for such periods as shall be satisfactory to Lender, and each policy shall provide that the loss thereunder and the proceeds payable thereunder shall be payable to Lender as its interest may appear.

    (d)    The Collateral shall not be used in violation of any applicable law or regulation.

    (e)    The Collateral may be examined and inspected by Lender at any reasonable time, wherever located.

    (f)    Any of the Collateral which becomes worn out or is damaged shall be promptly replaced with items of equal or greater value and utility.

    (g)    Borrower shall not sell, transfer, lease or otherwise dispose of any of the Collateral or any interest therein or offer to do so other than in the ordinary course of Borrower's business without the prior written consent of Lender, or permit anything to be done that may impair the value of any of the Collateral or the security intended to be afforded by this Agreement.

    (h)    Borrower shall pay promptly when due all taxes and assessments upon the Collateral or for its use or operation.

    (i)    Borrower shall sign and execute alone or with Lender any financing statement or other document or procure any documents and pay all costs, expenses and fees, including reasonable attorneys' fees, necessary to protect the security interest under this Agreement against the rights, interests or claims of third persons.

(j)     Borrower shall reimburse Lender for all costs, expenses and fees, including, without limitation, court costs and reasonable attorneys' fees, incurred by or for Lender for any action taken by or for Lender to remedy an Event of Default of Borrower hereunder or under any other loan documents between Borrower and Lender, together with interest thereon at the default rate (as defined in the Promissory Note) from the date incurred by Lender until repaid to Lender.

(k)     Borrower shall (i) from time to time promptly execute and deliver to Lender all such other assignments, certificates, supplemental writings, and financing statements, and do all other reasonable acts or things as Lender may request in order to more fully evidence and perfect the security interest created herein; (ii) punctually and properly perform all of its agreements and obligations under the Promissory Note, or any other loan documents between Borrower and Lender; (iii) pay the indebtedness secured hereby in accordance with the terms thereof and in accordance with the terms of the Promissory Note, or any other loan documents between Borrower and Lender; (iv) promptly furnish Lender with any information or writings which Lender may request concerning the Collateral; (v) allow Lender to inspect all records of Borrower relating to the Collateral, the Obligations and the business and operation of Borrower with respect to the Collateral, and to make and take away copies of such records; (vi) promptly notify Lender of any material adverse change in any facts or circumstances warranted or represented by Borrower in this Agreement or in any other writing furnished by Borrower to Lender in connection with the Collateral, the Obligations or the business and operation of Borrower; (vii) promptly notify Lender of any claim, action or proceeding affecting title to the Collateral, or any part thereof, or the security interest created herein, and, at the request of Lender, appear in and defend, at Borrower's expense, any such action or proceeding; and (viii) promptly, after being requested by Lender, pay to Lender the amount of all expenses, including reasonable attorneys' fees and other legal expenses, incurred by Lender in enforcing the security interest created herein, together with interest thereon at the default rate from the date incurred by Lender until the date repaid to Lender.

(l)     Except as otherwise approved in writing by Lender and except for the security interest of Itrea, Borrower shall not, without the prior written consent of Lender, create any other security interest in, mortgage, pledge, or otherwise encumber the Collateral, or any part thereof, or permit the same to be or become subject to any lien, attachment, execution, sequestration, other legal or equitable process, or any encumbrance of any kind or character.

(m)     Should any part of the Collateral ever be in any manner converted by its issuer or maker into another type of property or any money or other proceeds ever be paid or delivered to Borrower as a result of Borrower's rights in the Collateral, then all such property, money and other proceeds shall become part of the Collateral, and Borrower covenants to forthwith pay or deliver to Lender all of the same which is susceptible of delivery and, at the same time, if Lender deems it necessary and so requests, Borrower will properly endorse or assign the same. With respect to any of such property of a kind requiring any additional security agreement, financing statement or other writing to perfect a security interest therein in favor of Lender, Borrower will forthwith execute and deliver to Lender whatever Lender shall deem necessary or proper for such purpose.

(n)     Should any covenant, duty or agreement of Borrower fail to be performed in accordance with its terms hereunder, Lender may, but shall never be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Borrower, and any amount expended by Lender in such performance or attempted performance shall become a part of the

indebtedness secured hereby, and, upon demand of Lender, Borrower agrees to pay such amount promptly to Lender, together with interest thereon at the default rate from the date of such expenditure by Lender until repaid to Lender.

4. **Default**. An "Event of Default" shall occur under this Agreement, the Promissory Note or any other loan documents between Borrower and Lender or upon the occurrence of (a) a breach by Borrower of any of the covenants, agreements, representations, warranties or other provisions hereof which is not cured or waived within the applicable grace or cure period, if any, set forth in the Promissory Note, or (b) any other Event of Default described in the Promissory Note or any other loan documents between Borrower and Lender.

5. **Lender's Rights and Remedies**. Lender shall have available to it the following rights and remedies:

    (a) Right to Assign. Lender may assign this Agreement, and if Lender does assign this Agreement, the assignee shall be entitled to the performance of all of Borrower's agreements and obligations under this Agreement, and the assignee shall be entitled to all the rights and remedies of Lender under this Agreement. Borrower expressly agrees that it will assert no claims or defenses it may have against Lender against the assignee except those available to it pursuant to this Agreement.

    (b) Right to Discharge Borrower's Obligations. Lender may, at its option, discharge taxes, liens or security interests or other encumbrances at any time levied or placed on the Collateral, may remedy or cure any default of Borrower under the terms of any lease, rental agreement, or other document which in any way pertains to or affects Borrower's title to or interest in any of the Collateral, may pay for insurance on the Collateral, and may pay for the maintenance and preservation of the Collateral, and Borrower agrees to reimburse Lender, on demand, for any payment made or any expense incurred by Lender, including reasonable attorneys' fees, pursuant to the foregoing authorization, together with interest at the default rate from the date so paid or incurred by Lender until repaid to Lender, which payments, expenses and interest shall be secured by this Agreement and by the Promissory Note and the other loan documents.

    (c) Rights as Secured Creditor. Upon the occurrence of an Event of Default, Lender, in its sole and absolute discretion, may: (a) exercise any one or more of the rights and remedies afforded to secured parties under the Uniform Commercial Code in force in the State(s) in which the Collateral is located, together with any and all other rights and remedies otherwise provided and available to Lender at law or in equity; (b) enter, with or without process of law and without breach of the peace, any premises where the Collateral (or the books and records of Borrower related thereto) is or may be located, and without charge or liability to Lender therefor seize and remove the Collateral (and copies of Borrower's books and records in any way relating to the Collateral) from said premises and/or remain upon said premises and use the same (together with said books and records) for the purpose of collecting, preparing and liquidating the Collateral, all without cost to Lender; and (c) sell or otherwise dispose of the Collateral at public or private sale or auction for cash or credit (which sale or auction may, at the option of Lender, occur on the premises where the Collateral is located or elsewhere, at no cost to Lender) and from the proceeds of such sale or disposal retain (i) all costs and charges incurred by Lender in taking and causing the removal and sale or disposal of the Collateral, including reasonable attorneys' fees; and (ii) an amount equal to all other Obligations; provided, however, that Borrower shall be credited with the net proceeds of such

sale only when such proceeds are actually received by Lender.

(d) <u>Assembly of Collateral; Injunctive Relief</u>. Upon the occurrence of an Event of Default, Borrower, immediately upon demand by Lender, shall assemble the Collateral and make it available to Lender at a place or places to be designated by Lender. Borrower hereby acknowledges and agrees that if Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, no remedy of law shall provide adequate relief to Lender, and that Lender shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages or the posting of bond, surety or other security.

(e) <u>Notice of Collateral Disposition</u>. Any notice required to be given by Lender of a sale, lease or other disposition of the Collateral or any other intended action by Lender, deposited in the United States mail, postage prepaid and duly addressed to Borrower at Borrower's address set forth above not less than ten days prior to such proposed action, shall constitute commercially reasonable and fair notice to Borrower thereof.

(f) <u>Matters Regarding Sale of Collateral</u>. Borrower agrees that Lender may, if Lender deems it reasonable, postpone or adjourn any sale of Collateral from time to time by an announcement at the time and place of sale or by announcement at the time and place of such postponed or adjourned sale, without being required to give a new notice of sale. Borrower also waives and releases any cause of action and claim against Lender as a result of Lender's possession, collection or sale of the Collateral, any liability or penalty for failure of Lender to comply with any requirement imposed on Lender relating to notice of sale, holding of sale, or reporting of sale of the Collateral, and any right of Borrower to redeem the Collateral from such sale. At any sale or sales made pursuant to this Agreement or in a suit to foreclose the same, the Collateral, at the option of Lender or its assigns, may be sold (i) in its entirety or separately, at the same or at different times, and (ii) separate or together with any foreclosure sale of the collateral covered by any Mortgages in accordance with the Uniform Commercial Code of Illinois, and the Collateral need not be present at the time or place of sale. At any such sale, Lender or the holder of the indebtedness hereby secured may bid for and purchase any of the property sold, notwithstanding that such sale is conducted by Lender or its attorneys, agents, or assigns, and no irregularity in the manner of sale or of giving notice shall operate to preclude Lender from recovering the Obligations.

(g) <u>Replevin</u>. If Lender seeks possession of the Collateral through replevin or other court action, Borrower hereby irrevocably waives (i) any bond, surety or security required as an incident to such possession, and (ii) any demand by Lender for possession of the Collateral prior to the commencement of any such suit or action.

(h) <u>Enforcement Standards</u>. Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms hereof, notwithstanding any conduct or custom on the part of Lender in refraining from so doing at any time or times. The failure of Lender at any time or times to enforce its rights under said provisions strictly in accordance with the same shall not be construed or operate as a waiver of any of the rights and remedies granted Lender hereunder or as having created a custom in any way or manner contrary to the specific provisions of this Agreement or as having in any way or manner modified the same. All rights and remedies of Lender are cumulative and concurrent, and the exercise of one right or remedy by Lender shall not be deemed a waiver or release of any other right or remedy.

6. <u>Representations and Warranties</u>. Each Borrower represents and warrants that:

   (a) Borrower has authority to execute and deliver this Agreement;

   (b) except as otherwise approved in writing by Lender, no financing statement covering the Collateral, or any part thereof, has been filed and remains in effect;

   (c) no other security agreement covering the Collateral, or any part thereof, has been made and no security interest, other than the one herein created, has attached or been perfected in the Collateral or in any part thereof;

   (d) no dispute, right of setoff, counterclaim or defense exists with respect to any part of the Collateral;

   (e) at the time Lender's security interest attaches to any of the Collateral or its proceeds, Borrower will be the lawful owner with the right to transfer any interest therein, and Borrower will make such further assurances as to prove title to the Collateral in Lender as may be required and will defend the Collateral and its proceeds against the lawful claims and demands of all persons whomsoever.

The delivery at any time by Borrower to Lender of the Collateral shall constitute a representation and warranty by Borrower that, with respect to such Collateral, and each item thereof, Borrower is owner of the Collateral and the matters heretofore represented and warranted in this Paragraph 6 are true and correct. Further, Borrower, upon the request of Lender, agrees to amend this Agreement and any and all financing statements filed in connection therewith for the purpose of setting forth in said Agreement and said financing statements an accurate and itemized list of the Collateral now generally described herein and in said financing statements and to include in said accurate and itemized list an identification of the Collateral by make, model, serial number and other appropriate descriptive data.

7. <u>Subrogation</u>. If the Obligations, or any part thereof, are renewed or extended, or applied toward the payment of any indebtedness secured by any mortgage, pledge, security agreement or other lien, except for the rights of Itrea, Lender shall be and is hereby subrogated to all of the rights, titles, security interests and other liens securing the indebtedness so renewed, extended or paid, except for the payments due to Itrea.

8. <u>Further Agreements</u>.

   (a) "Borrower" and "Lender" as used in this Agreement include the legal representatives, successors and assigns of those parties.

   (b) Neither Borrower nor Lender shall be bound by any amendment not expressed in writing and signed by the party to be bound thereby.

   (c) It is expressly intended, understood and agreed that the relationship between Lender and Borrower is solely that of a lender and borrower, and nothing contained herein, or in the Promissory Note, or any of the other loan documents shall in any manner be construed as making the parties hereto partners, joint venturers or as creating any relationship other than lender and borrower.

(d) This Agreement shall be construed in accordance with and governed by the laws of the State of Illinois. In the event that any provision of this Agreement is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Borrower and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Agreement and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

(e) To the extent permitted by law, Borrower hereby waives any and all rights to require marshaling of assets.

(f) All notices, demands, requests and other correspondence which are required or permitted to be given hereunder shall be deemed sufficiently given when delivered or mailed in the manner and to the address of Borrower or Lender, as the case may be, as specified in the Promissory Note.

(g) This Agreement shall inure to the benefit of Lender and its successors and assigns and shall be binding upon Borrower and its successors and assigns.

9. <u>JURISDICTION AND VENUE</u>. BORROWER HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS INITIATED BY BORROWER AND ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT SHALL BE LITIGATED IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS OR, IF LENDER INITIATES SUCH ACTION, ANY COURT IN WHICH LENDER SHALL INITIATE SUCH ACTION AND WHICH HAS JURISDICTION. BORROWER WAIVES ANY CLAIM THAT CHICAGO, ILLINOIS OR THE NORTHERN DISTRICT OF ILLINOIS IS AN INCONVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE. THE EXCLUSIVE CHOICE OF FORUM FOR BORROWER SET FORTH IN THIS PARAGRAPH SHALL NOT BE DEEMED TO PRECLUDE THE ENFORCEMENT, BY LENDER, OF ANY JUDGMENT OBTAINED IN ANY OTHER FORUM OR THE TAKING, BY LENDER, OF ANY ACTION TO ENFORCE THE SAME IN ANY OTHER APPROPRIATE JURISDICTION, AND BORROWER HEREBY WAIVES THE RIGHT, IF ANY, TO COLLATERALLY ATTACK ANY SUCH JUDGMENT OR ACTION.

10. <u>WAIVER OF RIGHT TO JURY TRIAL</u>. LENDER AND BORROWER ACKNOWLEDGE AND AGREE THAT ANY CONTROVERSY WHICH MAY ARISE WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREIN WOULD BE BASED UPON DIFFICULT AND COMPLEX ISSUES AND THEREFORE, THE PARTIES AGREE THAT ANY COURT PROCEEDING ARISING OUT OF ANY SUCH CONTROVERSY WILL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the day and year first above written.

**IYS Ventures, LLC**

By:_____
Its: authorized agent

Dated:_____


**IYS Ventures, LLC Creditors Trust**

By:_____
Matthew Brash, not individually but
solely in his capacity as Trustee of the
IYS Ventures, LLC Creditors Trust

Dated:_____


**Lender**

By:_____
Its: authorized agent

Dated:_____